DECISION
This dispute arises out of action by Governor Donald L. Carcieri and his former Director of the Department of Administration, Beverly E. Najarian, to lay off for an indefinite time period the Sheriff of Newport County and three Chief Deputy Sheriffs and possibly to lay off and eliminate the position of the Sheriff of Kent County (the "Sheriffs") as a result of the State's severe budget crisis. The Sheriffs seek declaratory, equitable and injunctive relief to prevent such action, arguing that only the General Assembly may strip them of their statutory positions in the unclassified service to which they were appointed in 2001 for ten year terms, subject to removal for cause, pursuant to R.I. Gen. Laws § 42-29-1. According to the Sheriffs, a lay off for an indefinite term for budgetary reasons is not a lay off for just cause. They contend that any such action would constitute an unconstitutional deprivation of their property rights in continued employment for the duration of their statutory terms, claiming that they hold their positions subject only to removal for just cause. *Page 2 
The defendants respond that the Governor, acting through the Director of the Department of Administration, has the inherent power and, alternatively, the power under the just cause removal provision of the statute, to lay off the Sheriffs for economic reasons. They contend that the Governor has this power, notwithstanding their prior appointments to unclassified statutory positions for a term of years, from which they may be removed for just cause, in the interest of the fiscal health of the State. They argue that lay offs for reasons of economy, even for an indefinite time period, are not tantamount to an elimination or abolishment of the statutory positions. As such, defendants take the position that no legislative approval of the proposed lay offs is required and no due process rights of the Sheriffs are implicated.
For the reasons set forth in this Decision, this Court declares that the Governor has the inherent power, derived from the Rhode Island Constitution and state statutes, to lay off the Sheriffs for fiscal reasons, notwithstanding their appointment to ten year terms, from which they may be removed for cause, under § 42-29-1. Alternatively, the budget crisis constitutes just cause for such lay offs. The proposed lay offs of the Sheriffs do not constitute an elimination of their positions because the power of the Department of Administration to appoint persons to ten year terms as county and chief deputy sheriffs under § 42-29-1
remains unchanged, and the Sheriffs are entitled to return to their positions before the end of their statutory terms if there is no longer a fiscal reason for them to remain on lay off. Exercise of the lay off power, for economic reasons, does not run afoul of the due process rights of these employees.
As such, the defendants may proceed with the proposed lay offs of the Sheriff of Newport County and the three Chief Deputy Sheriffs named as plaintiffs herein for fiscal *Page 3 
reasons. As defendants have not yet taken action to abolish or eliminate any of these positions through reorganization or subcontracting — as they suggested they might do with the Sheriff of Kent County — the question of whether they may take such action with respect to her or anyone else is not yet ripe and will be saved for another day.
 I I Factual Background and Procedural History
The State of Rhode Island is in the midst of a severe financial crisis. Stmt of Undisputed Facts ¶ 14. Indeed, at the inception of this litigation, the estimated budget deficit for the past fiscal year was approximately $150 million. Id. ¶ 15. The estimated budget deficit at that time for the current fiscal year was between $400 and $450 million.Id. ¶ 16. As part of his efforts to deal with this fiscal crisis, Governor Donald L. Carcieri instructed the heads of the executive departments of state government to eliminate the jobs of 1,000 state employees through attrition, restructuring, subcontracting and/or lay off. Id. ¶ 17.
To comply with the Governor's directive, the Department of Administration reviewed all positions within the Division of Sheriffs — a division within the Department of Administration. Id. ¶ 18.[1] It specifically reviewed the positions currently held by plaintiffs: the Sheriff of Kent County, Ann M. Castelli; the Sheriff of Newport County, Joseph K. Ford; and three Chief Deputy Sheriffs, James M. Grant, Jo-Ann J. Macari, and Daniel E. Silva. These are unclassified positions carrying ten year terms to which the Director of the Department of Administration, with the consent of Governor Lincoln *Page 4 
Almond, appointed the Sheriffs, pursuant to R.I. Gen. Laws § 42-29-1, on December 2, 2001. Id. ¶¶ 1, 3, 5, 7, 9.[2]
After that review, the Department of Administration, acting through its previous Director, Beverly E. Najarian, [3] sent letters to the Sheriffs, dated November 15, 2007, to inform them of its intent to place them on lay off status or eliminate or subcontract their jobs or job functions due to the severe shortage of funds in the state budget.See Ex. 1 (Letters dated Nov. 15, 2007 from Najarian to Macari, Grant, Silva, Ford and Castelli). The Department also sent 145 other state employees lay off notices on the same date and gave notice to an additional 400 state employees that their positions might be eliminated as a result of reorganization and/or subcontracting. Stmt of Undisputed Facts ¶ 33.[4]
As the letters to the Sheriffs contain somewhat different verbiage, this Court will summarize each of them. The November 15, 2007 letter sent to Chief Deputy Macari informed her that the State intended to "eliminate" her position as Chief Deputy Sheriff at the Department of Administration due to a shortage of funds. See Ex. 1 (Letter dated Nov. 15, 2007 from Najarian to Macari).[5] It then advised her that because she had *Page 5 
statutory tenure, the State intended to place her in a position of similar grade which she was qualified to perform. Id. Until she received notice of such position, the Department of Administration agreed that it would keep her in her current assignment. Id. After the filing of this litigation and further review of her status, however, the Department determined that she was exempt from statutory tenure under R.I. Gen. Laws § 36-4-59 because she had been appointed to a position with a fixed statutory term. Stmt of Undisputed Facts ¶ 2.[6] It then advised her, by letter dated January 8, 2008, that a mistake had been made in the earlier notice and that she would not be eligible to be retained within state service in a position of similar grade; instead, she would be placed on lay off status, effective on the date of any decision by this Court denying her request for injunctive relief. Id. ¶ 21; see Ex. 1 (Letter dated Jan. 8, 2007 from Najarian to Macari).
The November 15, 2007 letters sent to Chief Deputy Sheriff Grant[7]
and Chief Deputy Sheriff Silva[8] stated that they would be placed on lay off status from their positions, *Page 6 
effective Friday November 30, 2007, due to the shortage of funds in the state budget. See Ex. 1 (Letters dated Nov. 15, 2007 from Najarian to Grant and Silva). These letters made no reference to elimination of their positions or their retention elsewhere in state service and were the only letters that these two sheriffs received.
The parties agree that the layoffs of all three Chief Deputy Sheriffs, plaintiffs Macari, Grant and Silva, are for an indefinite time period, but that they will be placed on a reemployment list. Stmt of Undisputed Facts ¶ 22. They further agree that their positions will not be filled by other individuals. Id. ¶ 23. The Department of Administration contends that by laying off the three Chief Deputy Sheriffs, it is able to avoid laying off "line officers" in the Division of Sheriffs,i.e., those deputy sheriffs who, inter alia, provide custody and control of the state prisoners and security for various state officials and facilities. Id. ¶ 32.[9]
The November 15, 2007 letter sent to the Sheriff of Newport County, Joseph K. Ford, advised him that, due to a severe shortage of funds in the state budget, it was necessary to reduce the state workforce and that the Department of Administration thus anticipated the subcontracting or elimination of some of its sheriff functions in the coming months. Id. *Page 7 
¶ 24; see Ex. 1 (Letter dated Nov. 15, 2007 from Najarian to Ford).[10] It further stated that such subcontracting or elimination would not result in his separation from state service, as his statutory tenure would enable him to obtain another position. Id. After the filing of this litigation and further review of his status, however, the Department of Administration determined, as it had with Chief Deputy Sheriff Macari, that he was exempt from statutory tenure under R.I. Gen. Laws § 36-4-59 because he had been appointed to a position with a fixed statutory term. Stmt of Undisputed Facts ¶ 29.[11] It then advised him, by letter dated January 8, 2008, that a mistake had been made in the earlier notice and that he would not be eligible to be retained within state service in a position of similar grade; instead, he would be placed on layoff status effective on the date of any decision by this Court denying his request for injunctive relief. Id.; see Ex. 1 (Letter dated Jan. 8, 2007 from Najarian to Ford). The parties agree that if the position held by Sheriff Ford is eliminated or subcontracted, he will be laid off for an indefinite time period, he will be placed on a reemployment list and his position will not be filled by other individuals. Stmt of Undisputed Facts ¶ 28.
The November 15, 2007 letter sent to the Kent County Sheriff, Ann Castelli, was similar to the letter sent to Sheriff Ford. It advised her that, due to a severe shortage of funds in the state budget, it was necessary to reduce the state workforce and that the Department of Administration thus anticipated the subcontracting or elimination of some *Page 8 
of its sheriff functions in the coming months. Id. ¶ 24; see Ex. 1 (Letter dated Nov. 15, 2007 from Najarian to Castelli). It further stated that such subcontracting or elimination "may" not result in her separation from state service, as her status, length of service and qualifications "may" enable her to obtain another position. Stmt. of Undisputed Facts ¶ 25; see Ex. 1 (Letter dated Nov. 15, 2007 from Najarian to Castelli). Unlike the other Sheriffs, the letter to Sheriff Castelli is notice not of a lay off, but of a possible lay off.See Ex. 1 (Letter dated Nov. 15, 2007 from Najarian to Castelli). The parties agree that if the position held by Sheriff Castelli is eliminated or subcontracted, she will be laid off for an indefinite time period, she will be placed on a reemployment list and her position will not be filled by other individuals. Stmt. of Undisputed Facts ¶¶ 27, 28.[12]
Following receipt of the November 15, 2007 lay off notices, the Sheriffs filed a three-count complaint in the Superior Court by which they seek the following relief:
 Count I:
 A writ of mandamus directing Defendants to maintain Plaintiffs in their respective positions during their term of office unless just cause is demonstrated for their removal;
 Count II:
 A declaratory judgment, pursuant to R.I. Gen. Laws 9-30-1 et seq., declaring "that only the Legislature may eliminate or change the term of office of the positions of Sheriff and Chief Deputy Sheriff and that the Defendants are obligated pursuant to § 42-29-1 to maintain Plaintiffs in their present positions absent just cause for removal;" and *Page 9 
 Count III:
 Temporary and mandatory injunctive relief "directing Defendants to maintain Plaintiffs in their respective positions until completion of their term of office, unless sooner removed for just cause."
Plaintiffs Grant and Silva — the only two of the Sheriffs who have been given notice of a definite date of lay off (effective November 30, 2007) — also filed a request for a temporary restraining order, with a supporting memorandum, asking to be retained in their positions pending a decision on the merits of their complaint. The defendants objected and filed a memorandum in opposition to plaintiffs' request for a temporary restraining order. On November 30, 2007, the defendants agreed to hold the lay offs in abeyance pending a hearing on preliminary injunction. On December 7, 2007, with the consent of the parties, the Court consolidated plaintiffs' request for preliminary injunctive relief with a trial on the merits. The parties agreed to an expedited briefing and hearing schedule upon an agreed statement of facts, and the defendants agreed to hold the lay offs in abeyance pending this Decision.
The parties filed legal memoranda on December 17, 2007, and they filed their Statement of Undisputed Facts on January 4, 2008. On January 8, 2008, as previously mentioned, the Department of Administration sent revised notice letters to Sheriff Ford and Chief Deputy Sheriff Macari to correct its earlier statements regarding statutory tenure and to give them notice of lay offs effective as of the date of any decision by this Court adverse to them. On January 30, 2008, this Court requested oral argument to supplement the memoranda. At that hearing, the Court expanded the record to include all of the letters sent to plaintiffs on November 15, 2007 and January 8, 2008. See Ex. 1. *Page 10 
The parties each filed supplemental memoranda thereafter to address issues raised by the Court in oral argument. This Decision follows.
 II Standard of Review
The Uniform Declaratory Judgments Act vests the Superior Court with the "power to declare rights, status, and other legal relations."Bradford Associates v. Rhode Island Division of Purchases, 772 A.2d 485,489 (R.I. 2001) (quoting R.I.G.L. § 9-30-1). Such declarations "shall have the force and effect of a final judgment or decree." Id. A person may seek such a declaration where that person has "rights, status, or other legal relations" which are "affected by a statute, municipal ordinance, contract, or franchise." R.I.G.L. § 9-30-2. The decision whether to grant declaratory relief lies within the sound discretion of the trial justice. Id. § 9-30-6; Sullivan v. Chafee, 703 A.2d 748, 751
(R.I. 1997).
A writ of mandamus is an extreme remedy that will be issued only when: (1) the petitioner has a clear legal right to the relief sought; (2) the respondent has a ministerial duty to perform the requested act without discretion to refuse; and (3) the petitioner has no adequate remedy at law. Union Station Assocs. v. Rossi, 862 A.2d 185, 193 (R.I. 2004). "A ministerial function is one that is to be performed by an official in a prescribed manner based on a particular set of facts `without regard to or the exercise of his own judgment upon the propriety of the act being done.'" Arnold v. R.I. Dep't of Labor and Training Bd. of Rev.,822 A.2d 164, 167 (R.I. 2003) (quoting Beacon Rest. v. Adamo, 103 R.I. 698, 703,241 A.2d 291, 294 (1968)). "`Once these prerequisites have been shown, it is within the sound discretion of the Superior Court justice to ultimately issue *Page 11 
the writ.'" New Engl. Dev., LLC v. Berg, 913 A.2d 363 (R.I. 2007) (quoting Martone v. Johnston School Comm., 824 A.2d 426, 429 (R.I. 2003)); see also Hennessey v Bridgeport, 569 A.2d 1122, 1125 (Ct. 1990) (where the Mayor exercises the inherent power to lay off city employees for serious financial reasons, a mandamus action by a laid off city employee must fail because the Mayor has the discretion to dismiss the employee).
An injunction is "an extraordinary remedy." Brown v. Amaral,460 A.2d 7, 10 (R.I. 1983). The Rhode Island Supreme Court has made it clear that, as a prerequisite to issuing an injunction, the moving party must demonstrate that it is being threatened with some immediate irreparable injury for which there is no adequate remedy at law. In Re StateEmployees Union, 587 A.2d 919, 926 (1991); Paramount Office Supply Co.v. MacIsaac, 524 A.2d 1099, 1102 (R.I. 1987); Brown, 460 A.2d at 10. Injuries which are prospective or speculative cannot be remedied through injunctive relief. R.I. Turnpike Bridge Auth. v. Cohen, 433 A.2d 179,182 (R.I. 1981). The party seeking injunctive relief also must show that the balance of equities tips in its favor. Id.; Leone v. Town of NewShoreham, 534 A.2d 871, 873 (R.I. 1987). Finally, that party must show that injunctive relief is in the public interest. State EmployeesUnion, 587 A.2d at 926.
 III Analysis
In seeking declaratory and equitable relief, the Sheriffs contend that they were all appointed to ten year fixed statutory terms under R.I.G.L. § 42-29-1, subject to removal only for just cause. As the statute contains no express provision for removal of sheriffs and deputies for economic reasons and, unlike deputy sheriffs, does not condition their *Page 12 
appointments on the appropriations process, the Sheriffs argue that the power to remove them for fiscal reasons may not be read into the statute by implication. In addition, they argue that such economic reasons cannot constitute just cause for their removal. They argue further that action by the Department of Administration, at the behest of the Governor, to place them on indefinite lay off status for fiscal reasons constitutes an effective abolishment of their positions, in violation of § 42-29-1 and the dictates of Eaton v. Town Council of Warren,52 R.I. 449, 161 A.2d 225 (R.I. 1932), as only the General Assembly may eliminate or change their statutory terms of office. The Sheriffs also contend that such lay offs violate their rights to substantive and procedural due process, as they constitute an unlawful deprivation of their property interests in continued employment for the duration of their ten year statutory terms.
The Sheriffs do not quarrel with the proposition that the Governor has proposed to lay them off due to the fiscal crisis of the State. They likewise do not contend that their lay offs would impact the judiciary in a way that might create separation of powers issues.
The defendants respond that the executive branch has the inherent power, rooted in the Rhode Island Constitution and state law, to lay off the Sheriffs for budgetary reasons, notwithstanding their appointment, pursuant to § 42-29-1, to ten year terms and the language of the statute allowing for the removal of "sheriffs and deputies" for just cause. Indeed, they argue that chief deputy sheriffs are not included in the just cause removal provision of the statute and thus serve at the pleasure of the appointing authority and may be removed for any reason. Alternatively, they argue that, to the extent the statute only allows the Sheriffs to be removed for just cause, the pending fiscal crisis *Page 13 
constitutes just cause. In addition, the defendants reject the notion that Eaton restricts the Governor's inherent power to lay off the Sheriffs for economic reasons and argue further that a layoff for fiscal reasons, even for an indefinite term, is not tantamount to a job abolishment. Finally, defendants argue that a lay off for fiscal reasons does not implicate the substantive or procedural due process rights of the Sheriffs.
In addressing these arguments, this Court first will determine whether the Governor has the inherent power under the Rhode Island Constitution and state law to lay off unclassified executive branch employees, such as the Sheriffs, in times of fiscal crisis. This Court next will address whether § 42-29-1, which provides for the appointment of sheriffs to ten year terms and further provides that "sheriffs and deputies" can be removed for cause, restricts any such power of the Governor. As part of this analysis, this Court will address whether economic reasons constitute "just cause" to lay off. This Court next will determine whether Eaton restricts the power of the Governor to lay off these employees, indefinitely, in times of fiscal crisis. The Court then will address the due process implications, if any, of the proposed lay offs. Finally, the Court will distinguish a job abolishment from a lay offs as it applies to this case.
 A. The Inherent Power of the Governor
Although the Rhode Island Supreme Court has not yet had occasion to address this issue, many jurisdictions recognize the inherent power of the chief executives in state and municipal government to lay off executive branch employees for fiscal reasons.[13] *Page 14 
This inherent authority is rooted in their general executive authority established by state constitution or city charter.[14]
The seminal decision of the Connecticut Supreme Court inHennessey v. Bridgeport upholds the inherent authority of the chief executive to lay off executive branch employees for fiscal reasons.569 A.2d 1122 (Ct. 1990). In Hennessey — a case with facts remarkably similar to the case at bar — the Connecticut Supreme Court reviewed a decision by the Mayor of the City of Bridgeport to lay off for economic reasons a city employee who had been appointed, pursuant to the City Charter, to a statutory fixed term of years, subject only to removal for cause. Id.[15] In upholding the lay off decision, the Court reasoned that the "chief executive authority" of the Mayor, and his "responsibility to manage the city's finances" under the City Charter, afforded him the inherent power, implied from this general grant of executive power, to order the lay off of city employees for economic reasons. Id. at 1125. *Page 15 
Importantly, the Court found that the Mayor's authority to lay off city employees for fiscal reasons was so fundamental that it could be curtailed only by a charter provision specifically limiting the Mayor's ability to exercise it. Id. (emphasis added). "Where the charter says nothing about lay offs for fiscal reasons, a city's mayor, as its chief executive officer, has the authority to order lay offs of city employees for the purpose of implementing a properly promulgated municipal budget that mandates fiscal stringency." Id. (emphasis added).[16]
Absent an explicit, lawful prohibition on the inherent power of the executive branch to lay off its employees in times of fiscal crisis, therefore, it may exercise that power. Id.; see n. 16,supra.[17] As held by the United States District Court for the District of Rhode Island in Hartman v. Providence, where there is nothing in the city charter limiting the power to dismiss an employee or abolish his or her office for financial reasons, the city is free to do so. 636 F. Supp. 1295, 1408 (D.R.I. 1986).
Any express legislative restriction on that power, however, must not interfere unconstitutionally with the authority of the executive branch.Communications Workers of Am. v. Florio, 617 A.2d 223 (N.J. 1992). The New Jersey Supreme Court held, in Florio, that the attempt of the Legislature to restrict the Governor's ability to lay off executive branch employees (by statutorily directing Governor Florio to lay off *Page 16 
unclassified employees before classified employees) was an impermissible incursion into the function of the executive. Id. at 235-236. Such an unconstitutional intrusion is found where "shared authority is not necessary to effectuate the [underlying] statutory scheme, or where the legislative intrusion threatens to interfere with exclusive functions of another branch." Id. The Court held:
 where the Constitution commits the authority and the duty to run the executive branch to the Governor, for better or worse, decisions on how to use the funds appropriated by the legislature to staff executive agencies are for the Governor to make, and the legislature may not dictate whom he may, or may not, lay off.
Florio, 617 A.2d at 235-36. It reasoned that:
 [a]lthough the legislature may appropriate and dictate, if it desires, the services and positions designated for such appropriation, there is one thing the legislature cannot do. It cannot exercise the functions of the executive. It cannot administer the money after it is appropriated.
Id. at 235.
While the Rhode Island Supreme Court has yet to consider whether the Governor has the inherent power to lay off executive branch employees for fiscal reasons, there is evidence that it would opt to follow in the footsteps of these other jurisdictions. Indeed, during the last fiscal crisis faced by this State in the early 1990s, the Rhode Island Supreme Court, albeit on other grounds, affirmed a decision by the appointing authority in the executive branch to dismiss a sheriff for fiscal reasons. See Donnelly v. Almond, 695 A.2d 1007, 1009 (1997) (holding that a Chief Deputy Sheriff, whose appointment was coincident with the County Sheriff, and who could be dismissed at the pleasure of the County Sheriff under an earlier version of § 42-39-1, could be dismissed for financial reasons because the "sheriff's specific right to appoint and revoke any deputation under *Page 17 
R.I.G.L. §§ 42-29-4 and 42-29-9 prevails over plaintiff's general interest in continued employment").
More importantly, the Supreme Court determined, during that last era of fiscal crisis, that the Governor has the inherent power to furlough state employees in the executive branch as part of a temporary shutdown of state government. In re State Employees Union, 587 A.2d 919 (R.I. 1991) (upholding Governor's authority to shut down executive branch functions of state government for ten days). The Court recognized that the Governor derives this inherent authority from the Rhode Island Constitution and state law. Id; see R.I. Const. art. IX, §§ 1, 2 (vesting the Governor "with the chief executive power within the state" and providing that he "must ensure that the State's laws be faithfully executed"); R.I.G.L. §§ 42-11-2 (a), (b) (requiring the Governor to prepare and administer the state budget).[18]
While lay offs for an indefinite term, as proposed here, certainly impact state employees more significantly than furloughs connected with a short term shutdown of state government, the guiding precept of the high court's decision in In Re State Employees Union is equally applicable to executive branch lay offs and furloughs: in the absence of explicit, lawful constraints on the Governor's power, the Governor has the *Page 18 
inherent power, derived from the Constitution and state law, to remove executive branch employees from state service without pay in response to a state budget crisis. As stated so eloquently in that case:
 Plainly, the legislature did not pass but the hilt of the sword to the Governor and, at the same moment, retain its blade. To the contrary, the legislature assigned and conveyed the saber and its cutting edge to the Governor with the authority to use it suitably in order to cut the State's deficit and to bring the State's budget to level balance.
In Re State Employees Union, 587 A.2d at 924 (quoting Superior Court decision of Krause, J.).
With the advent of the amendments to the Rhode Island Constitution that have been made since In Re State Employees Union, it can be argued that the Governor's inherent power to effectuate lay offs and other personnel cuts in the interest of the state's fiscal health is even stronger today. Under the recent separation of powers amendment to the Rhode Island Constitution, for example, the power of the Governor over executive branch functions has been cast in constitutional concrete.[19] In addition, while the General Assembly has the power of the purse, [20] the Constitution now provides a stronger check on that power by delegating to the Governor a vital role in ensuring a balanced budget.[21] *Page 19 
The Rhode Island Constitution thus now recognizes, more explicitly, the distinction between the power to appropriate funds (a legislative function) and the power to expend the appropriated funds (an executive function). See Hartman, 636 F. Supp at 462.
While the Legislature can refuse to fund certain operations of the executive branch, it cannot appropriate funds to that branch and tell the Governor how to spend them. The Governor is duty bound to use the resources given him by the General Assembly to produce an efficient government. It is not the prerogative of the General Assembly to administer the money after it has been appropriated. That is a function of the executive branch. Florio, 617 A.2d at 461-62.
The power of the Governor thus necessarily entails making cuts in the executive branch budget to provide the most cost-effective government. Just as private citizens should live within their means, so too should our government. When the budget gets out of balance — as it is in Rhode Island today — the Governor has the ability and indeed the responsibility to make necessary cost cuts so as to enable the departments of state government to function as efficiently and effectively as possible. It necessarily follows, therefore, that the Governor has the inherent authority, subject to any lawful constraints on that power, to direct the Department of Administration to lay off unclassified executive branch employees. *Page 20 
 B. The Interplay between Section 42-29-1 of the Rhode Island General Laws and the Governor's Inherent Power
Mindful of this precedent, this Court next must examine whether the General Assembly has attempted to constrain the Governor's inherent power to lay off the Sheriffs through its enactment of R.I.G.L. § 42-29-1 — the statute under which the Department of Administration, with the consent of the Governor, appointed the Sheriffs for a term of years and which allows "sheriffs and deputies" to be removed for cause. After all, it is this statute that the Sheriffs claim bars their lay offs for fiscal reasons and that the defendants claim cannot prevent the executive branch from exercising its inherent power — or, alternatively, its just cause removal power — to lay off the Sheriffs in times of economic crisis.
1. The Statute
Section 42-29-1 provides, in pertinent part, as follows:
 (a) The director of the department of administration shall appoint with the consent of the governor an administrator to a ten (10) year term to be in charge of the division of sheriffs within the department of administration. The director of the department of administration shall also appoint with the consent of the governor an executive high sheriff to a ten (10) year term to assist the administrator. The director of the department of administration shall also appoint to each of the counties with the consent of the governor the sheriffs and the chief deputy sheriffs to ten (10) year terms. The director of the department of administration shall appoint deputy sheriffs and other necessary classifications, subject to the appropriations process. . . . The sheriffs of the several counties and the deputy high sheriff for Providence County who are in office as of February 1, 2001 shall continue to hold office *Page 21 
until their present term expires.
 (b) The administrator, assisted by the executive high sheriff, the sheriffs, the chief deputy sheriffs, and the deputy sheriffs shall perform all the duties required and exercise all the powers prescribed in this chapter [and] chapter[s]. . . . Sheriffs and deputies can be removed for just cause by their appointing authority.
(Emphasis added).[22] In construing this statute, this Court is guided by settled precepts of statutory construction.[23] *Page 22 
By its terms, § 42-29-1 creates a ten year term of office for county sheriffs and chief deputy sheriffs appointed by the Director of the Department of Administration with the consent of the Governor. The statute further provides that "sheriffs and deputies" can be removed for "just cause" by their appointing authority, although it does not define "just cause." It likewise does not make clear whether chief deputy sheriffs, being a new creature of statute since the Legislature first employed the phrase "sheriffs and deputies," can be removed for just cause or whether they serve at the pleasure of the appointing authority.[24] The statute is otherwise silent as to whether the appointing authority also has the power to lay off these employees in times of fiscal crisis.[25] *Page 23 
It is clear, therefore, that § 42-29-1 does not explicitly prohibit the Governor from laying off sheriffs and chief deputy sheriffs for fiscal reasons. The absence of such an express prohibition alone suggests that the Legislature did not curtail the Governor's inherent power to lay off these employees in times of fiscal crisis. See Hartmanv. Providence, 636 F. Supp. at 1408; Hennessey, 569 A.2d at 1125; n. 16 17, supra.
In addition, the statute and its legislative history cannot be reasonably construed as implicitly prohibiting such lay offs. It does not guarantee the Sheriffs the right to hold their offices for the entire tenure of their ten year appointments, absent just cause for removal. Under settled precedent of the Rhode Island Supreme Court, the statutory language providing for the appointment of sheriffs and chief deputy sheriffs to ten year terms sets the terms of the office, but not the terms of the office holders. See Anderson v. Sundlun, 625 A.2d 213,215-216 (R.I. 1993) (holding that the appointment of the Executive High Sheriff for Providence County to a "term of years" only fixed the term of the office, not the period the office holder would hold office).
In that regard, the language of the statute pertaining to sheriffs and chief deputy sheriffs appointed after February 1, 2001 differs from the statutory provisions applicable to county sheriffs and the deputy high sheriff of Providence County in office as of that date.[26] As to these earlier appointees, the statute mandates that they "shall continue to *Page 24 
hold office until their present term expires." § 42-29-1(a). There is no such mandate as to those county sheriffs and chief deputy sheriffs, like plaintiffs, who were appointed after February 1, 2001. Id. Thus, while the General Assembly may have intended to fix the term of those county sheriffs and the deputy high sheriff holding office as of February 1, 2001, by mandating that they shall hold office until their present terms expire, it granted the newer appointees, such as the Sheriffs here, no such protection.[27]
The Legislature omitted that protection for the new appointees in the 2001 amendment with its eyes wide open. It knew, at least as far back asEaton v. Town Council of Warren, how to craft a statute fixing the term of an office holder. 52 R.I. 449, 452, 161 A.2d 225, 226 (R.I. 1932) (court found that it could not add a clause to a state statute that would permit a municipality to remove a police officer from the state police force "by implication" where the statute mandated that police officers "shall hold their respective offices until vacated by death or resignation," except when removed for cause). Indeed, it had afforded sheriffs greater protections in its prior incantations of § 42-29-1.See n. 22, supra (detailing earlier versions of statute that stated that sheriffs either shall hold office at the pleasure of the Governor and until a successor is appointed and qualified or for a period of tenyears). When it amended the statute in 2001, the General Assembly knew, under the dictates of Anderson, that the language appointing sheriffs and chief deputy sheriffs to ten year terms would fix only the terms of office and *Page 25 
not the tenure of the office holders.[28] As such, the current version of § 42-29-1 cannot be read as guaranteeing the Sheriffs the right to hold office for ten years, subject to removal for cause.
Furthermore, the statute does not state, as the Sheriffs attempt to argue, that sheriffs and deputies may be dismissed only for cause. The statute's only reference to removal states: "sheriffs and deputiescan be dismissed for just cause." § 42-29-1(b) (emphasis added). As such, the statute does not limit the removal of sheriffs and deputies — including those who "shall continue to hold office until their present term expires" — for "just cause." Other avenues, such as the Governor's inherent power to remove them for financial reasons, are not precluded.
This Court must conclude, therefore, that in enacting § 42-29-1, the Legislature did not expressly or impliedly limit the Governor's inherent authority to lay off the Sheriffs for economic reasons. Absent such limitation, there is no impediment to those lay offs.
2. Eaton v. Town Council of Warren
This Court reaches this conclusion, mindful of the Rhode Island Supreme Court's decision in Eaton v. Town Council of Warren,52 R.I. 449, 161 A.2d 225 (R.I. 1932). Eaton, however, is utterly distinguishable.
In that case, the Warren Town Council passed a resolution that abolished the office of patrolman held by plaintiff Eaton, its most junior police officer, for reasons of *Page 26 
economy. 52 R.I. at 226, 161 A. at 450. Indeed, it found that there was a depression in business in the town and that large amounts of taxes were unpaid. Id. It passed the resolution in the face of a state statute that authorized the Town to establish a permanent police force and provided that police officers appointed by the Town "shall hold their respective offices until vacated by death or resignation . . . subject to removal . . . for misconduct or incapacity." Id. 52 R.I. at 226,161 A. at 451 (citing P.L. 1905, ch. 1290).
On appeal, the Town Council argued that, in the absence of statute or charter provisions limiting its authority, it had the power to abolish the office of a municipal police officer for fiscal reasons.Id. 52 R.I. at 226, 161 A. at 452. The Supreme Court stated that it did not question the soundness of that general proposition; yet, it found that the question before it was the power of the municipality to act.Id.
The Supreme Court held that the Warren Town Council had no power to abolish, for reasons of economy, the office of a member of the permanent state police force. Id. The crux of its decision was that a municipal police officer, appointed pursuant to state statute, is part of the state police force that performs a state, and not just a municipal, function. As such, a municipality has no right to abolish such office in the absence of modification of the statute by the General Assembly to allow for such municipal action. Id. 52 R.I. at 226-27,161 A. at 452-53.
Our high court found that the purpose of the state statute at issue was to provide a permanent and not a changing police force which would be defeated if it were to be interpreted as allowing for the municipal abolition of offices of the state police force for economic reasons.Id. 52 R.I. at 227, 161 A. at 452. It determined that the statute could not be construed as implying that the municipality had the right to change the tenure of *Page 27 
office fixed by the statute for economic reasons that may be only temporary. Id. It found that the statute guarded the interest of the public by allowing for dismissal from office for cause only.Id. 52 R.I. at 227, 161 A. at 453.
Here, in contrast, a municipality does not seek to act in contravention of state law. This is not a case of a town government seeking to conserve its municipal resources — and thus potentially thwarting the state's public safety objectives — by removing a member of the state police force from office and abolishing his position. This case, instead, questions the power of the chief executive of state government to lay off his own employees for fiscal reasons in the absence of an explicit legislative prohibition of such power or the Legislature's consent to its exercise. The Supreme Court's decision inEaton — which did not address that fundamental issue — is thus inapposite.
In addition, the statute at issue in Eaton is readily distinguishable from the statute at issue here. In Eaton, the statute expressly granted the police officers the right to hold office until death or resignation, subject to removal only for cause. Here, in contrast, the statute does not provide that the Sheriffs "shall hold" office for ten years nor does it subject them to removal only for cause. As discussed previously, it sets the term of the office at ten years but not the term of the office holder; it also allows removal for cause, but does not preclude removal for other reasons. Id; see also Durepos v. Van Buren, 516 A.2d 565 (Me 1986) (holding that a dismissal for economic reasons did not violate a town charter provision that permitted removal for cause but did not bar removal in the absence of cause).[29] As such, there is no implicit prohibition in the statute on the *Page 28 
Governor's inherent power to lay off the Sheriffs for financial reasons. A fair construction of the statute in this case thus reveals that the Governor has the implied power to lay off executive branch employees for economic reasons.
Moreover, even if § 42-29-1 were to be read identically to the statute at issue in Eaton, notwithstanding the stark differences in the verbiage of the two statutes, that 75 year old case still would not compel a different result here. Eaton does not stand for the proposition that the Governor lacks the power to lay off such executive branch employees in times of fiscal crisis. Indeed, Eaton did not even address that issue. As noted previously, it held only that a municipality does not have the unilateral power to alter state law without the consent of the General Assembly — a proposition with which this Court has no quarrel.Id. 52 R.I. 449, 161 A.2d 225.
In addition, the Supreme Court's more recent and relevant decision inIn Re State Employees Union, allowing furloughs of executive branch employees for fiscal reasons despite the "no dismissal except for cause" provisions of state law, suggests that our high court would not viewEaton as barring the Governor from exercising his inherent lay off power in this case. Significantly, the Court in In Re State EmployeesUnion, 587 A.2d 919 (R.I. 1991) did not even cite to Eaton nor has that old chestnut been cited in any of the sheriff cases arising under § 42-29-1. See, eg., Donnelly v. Almond, 695 A.2d 1007 (R.I. 1997);Anderson v. Sundlun, 625 A.2d 213 (R.I. 1993); Casey v. Sundlun,615 A.2d 481 (R.I. 1992); DeCecco v. State of Rhode Island, 593 A.2d 1342
(R.I. 1991). *Page 29 
Moreover, recent case law from other jurisdictions affirms the power of the chief executive to lay off its employees in times of fiscal crisis, notwithstanding provisions of law granting them term appointments and protection from dismissal except for cause. See Decision, Part B.3.,infra (collecting cases).
3. The Trend
Even if § 42-29-1 could be read as requiring the Sheriffs to holdoffice for ten year terms, subject to removal only for just cause, that does not equate to a legislative restriction on gubernatorial lay off power. Indeed, other courts that have addressed this issue have ratified the authority of the executive branch to lay off its employees — and indeed abolish their positions — in periods of fiscal crisis. This action has been allowed even where the employees hold statutory fixed term positions and are subject to removal only for cause.
It is well established, for example, that the inherent authority of the executive branch to lay off its employees exists even in the face of statutes, charters or ordinances that allow for removal of employees only for "just cause." See Hennessey, 569 A.2d at 1125 ("The power to lay off municipal employees when a city's financial condition so warrants is necessarily implied from the city's authority over its finances" and exists "despite a no dismissal except for cause provision."); see generally, The Power to Suspend or Lay Off PublicOfficers or Employees for a Temporary Period Without Pay As an Economyand Not a Disciplinary Measure, 111 A.L.R 432 (1st ed. 1937) (listing jurisdictions where removal for cause requirement does not effect ability to dismiss for economic reasons); 4 Eugene McQuillin,Municipal Corporations § 12.246 (3rd ed. 1996) (government officials may dismiss government employees for reasons of economy *Page 30 
without violating statutory charter provisions barring removal except for cause).[30] The inherent right "to discharge or lay off employees in good faith because of lack of work or for purposes of economy . . . exists independently" from and is not restricted by a civil service statute limiting dismissals to "for cause" removal only. Kennedy v. Cityof Joliet, 380 Ill. 15, 21, 41 N.E.2d 957, 960 (1942); see CalumetFirefighters v Stefaniak, 612 N.E.2d 29, 31 (Ill.App. 1993).
Statutes, ordinances and charter provisions that require just cause for dismissals are limitations on the ability to dismiss an employee for matters related to that employee and are "`not intended to restrict the public authorities in their efforts to effect [sic] necessary or desirable economies.'" McNea v. Voinovich, 70 Ohio St. 2d 117, 118,435 N.E.2d 420, 422 (Ohio 1982) (quoting State, ex rel. Buckman, v.Munson, 141 Ohio St. 319, 326, 48 N.E.2d 109, 113 (Ohio 1943)).[31] As stated by the United States District Court for the District of Rhode Island:
 So long as the sweep of the axe is truly job-directed and not person-directed, that is, if abolition of the position is not a mere pretext for removing an employee *Page 31 
from office, the government's actions may not be challenged under a `no dismissal except for cause' standard.
Hartman, 636 F. Supp. at 1410.
The Court in Hartman recognized this precept as the "furlough/reorganization exception to the no dismissal except for cause rule." Id. at 1416.[32] It held that an appointment terminable only for cause or "other civil service or merit schemes having precisely the same functional effect" cannot be used to "scotch government's discretionary power to reorganize or to trim its employment rolls."Id. at 1410. Predicting that the Rhode Island Supreme Court, if faced with the same issue, would adopt the furlough/reorganization exception to the no dismissal except for cause rule, the Court inHartman reasoned:
 The `evident legislative purpose' of the [no dismissal except for cause provision of section 904 of the Providence City] Charter[33] — to safeguard regular employees of the City against arbitrary and capricious discharges — is fully preserved by the reorganization exception. And, inasmuch as the Rhode Island courts have consistently demonstrated an abhorrence toward construing laws in a fashion that `leads to absurd or unreasonable results,' Trembley v. City of Central Falls, 480 A. 2d 1359, 1363 (R.I. 1984); see also Rhode Island State Police v. Madison, 508 A.2d 678, 682 (R.I. 1986), the reorganization exception becomes almost obligatory. In its absence, the predictable results would be chaotic. Providence would be hamstrung in its efforts to streamline municipal government or to adjust to changing *Page 32 
times. . . . A no dismissal except for cause rule is a shield to armor public employees against unwarranted personal attacks or unfair discrimination by their superiors; it is not a monkey wrench casually to be thrust into the machinery of government in order to frustrate legitimate change.
Id. at 1410, 1415. These authorities make it abundantly clear, therefore, that the executive branch has the authority to lay off its own unclassified employees, even when they are statutorily subject to removal only for cause.
Significantly, a sister court has taken this analysis one step further and held — based on facts remarkably similar to those in the case at bar — that the executive branch has this power not only where its employees are subject statutorily to removal only for just cause, but also where they hold their positions for a statutory term of years.Hennessey, 569 A.2d 1122, 1125 (1993).[34] The Connecticut Supreme Court held, in Hennessey, that the Mayor of Bridgeport had the power to lay off a department director for fiscal reasons even though, by ordinance, he held his position for a term of years, subject to removal only for cause. Id. Moreover, this fundamental power could only be restricted by amendment to the City Charter. Id.
The Superior Court in New Jersey has held that the executive branch has the inherent authority even to abolish civil service positions held by its unclassified employees for a term of years. See McCartney v.Franco, 87 N.J. Super. 292, 297, 209 A.2d 329, 331-32 (N.J.Super. 1965). In McCartney, it stated as follows: *Page 33 
 The fact that a person is appointed for a definite term does not preclude a municipality from abolishing the office or position. . . . Since the plaintiff's term [as an unclassified employee] was fixed by law, he does not enjoy the `tenure of office' protection as a civil service employee, but merely a right, at most, to claim the office and the emoluments thereof for the unexpired portion of the term. . . .Except where an office or position is required by statute, `the governing body of a municipality may, by appropriate action, dispense with and abolish positions of public employment the need for which no longer exists.
87 N.J. Super. at 297, 209 A.2d at 331. (citations omitted).[35] InGeraghty v. Berkeley Heights, 613 A.2d 497, 500 (N.J.Super. 1992), the Court held that the municipality of Berkeley Heights acted properly when it removed its Town Treasurer for fiscal reasons, even though he had been appointed to a term of years by ordinance and was protected by statutory civil service protections. The Court stated:
 The fact that one is appointed for a definitive term does not preclude abolition of the position. "Whether tenured or holding a fixed term, there is implied within a contract of public employment the provision that the position might be subject to a bona fide termination for reasons of economy."
Geraghty, 613 A.2d at 500 (quoting Stone v. Old Bridge Township,215 N.J. Super. 361, 369, 521 A.2d 1329, 1333 (App.Div. 1987), rev'd on other grounds, 111 N.J. 110, 543 A.2d 431 (1988)).
These well reasoned authorities compel the conclusion, therefore, that the Governor has the inherent power to lay off the Sheriffs, notwithstanding their *Page 34 
appointment to a term of years under § 42-29-1, subject to removal for cause. Indeed, it could be argued that, in the absence of a statute or constitutional provision constraining the Governor's power in this regard, any such state statute or construction of state statute that limits this inherent authority of the Governor could render the statute unconstitutional. See id; Florio, 617 A.2d at 229; Hennessey, 564 A.2d at 1125; Hartman, 636 F. Supp. at 1408; n. 17, supra. Accordingly, this Court declares that, even if the statute at issue is interpreted as the Sheriffs suggest, the Governor possesses the inherent executive power, rooted in the Rhode Island Constitution and state law, to lay them off.[36] *Page 35 
 C. Constitutional Due Process
The next question is whether the Governor's proposed lay offs of the Sheriffs violates the due process clauses of the state and federal constitutions. The Sheriffs allege in their complaint that, by virtue of their appointment to ten-year terms under § 42-29-1, they acquired a constitutionally protected property interest in continued employment for the duration of their terms, subject only to removal for just cause. They assert that in laying them off, without just compensation, the defendants have deprived them of that interest without substantive or procedural due process of law. Nowhere in their pleadings, however, do the Sheriffs suggest that the lay offs have deprived them of a fundamental right necessary to establish a substantive due process right nor do they define the procedural due process protections of which they were deprived.
A substantive due process claim can exist when a government decision adversely affects a fundamental right of an individual. Perry vMcGinnis, 209 F.3d 597 (6th Cir. 2000). A claim also may exist where the government acts in an arbitrary and capricious manner that deprives an employee of a property right in employment,University of Michigan v. Ewing, 474 U.S. 214 (1985), or a liberty interest in the right to work in a lawful occupation. Singleton vCecil, 155 F.3d 983 (8th Cir. 1998).
The Sheriffs do not have a cognizable substantive due process claim. Their interest in continued employment is not a fundamental right nor do their lay offs affect a *Page 36 
fundamental right. See Nicholas v Pennsylvania State Univ.,227 F.3d 133, 142 (3rd Cir. 2000) (noting the general rule that an interest in continued government employment, even when tenured, is not the type of fundamental right protected by substantive due process protects); Perry, 209 F.3d at 609. Additionally, the Governor's decision to lay off the Sheriffs is based on sound law. The parties agree, in their Statement of Undisputed Facts, that it is related to its stated purpose: the budget crisis. The proposed lay offs, therefore, are not arbitrary or capricious. See Newman v. Burgin, 930 F.2d 955, 963
(1st Cir. 1991) (where stated reasons adequately support an adverse personnel action, that action is not "arbitrary"). As such, the Sheriffs fail to make out a claim for violation of their state or federal substantive due process rights.
With respect to their purported procedural due process claims, the Sheriffs must prove, under the Rhode Island and United States Constitutions: (1) that they have a "property interest" or legal entitlement to continued employment in their fixed term positions; and (2) that the defendants have deprived them of that interest without procedural due process of law. Ventetuolo v. Burke, 470 F. Supp. 887,891 (D.R.I. 1978).[37] The United States Supreme Court has recognized that the "property interest" protected by the Fourteenth Amendment includes government benefits, such as public employment. Board ofRegents v Roth, 408 U.S. 564, 576-578 (1972). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He [or she] must have more than a unilateral expectation of it. He [or she] *Page 37 
must, instead, have a legitimate claim of entitlement to it."Roth, 408 U.S. at 577. Although federal employees are subject to the "longstanding rule in the federal courts that a fixed term merely provides a time for the term to end," Stanley v. DOJ, 423 F.3d 1271,1274 (2005) (citing Pievsky v. Ridge, 98 F.3d 730, 734 (3d Cir. 1996)), property rights are "created from and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Id.; see also Salisbury v. Stone, 518 A.2d 1355,1360 (R.I. 1986) ("An employee's interest in continued employment constitutes a property interest protected by the due process clause only if the interest is grounded in a `legitimate claim of entitlement' arising out of state law").
Rhode Island law provides that the Sheriffs have a protected property interest in their employment and are entitled to due process protections when being dismissed for cause. DeCecco, 593 A.2d at 1333-44. InDeCecco, the Supreme Court found that the Deputy High Sheriff for Providence County, appointed to a ten year term, had a legitimate expectation of continued employment and, upon termination, was "entitled to a greater panoply of rights than are most unclassified employees, who serve at will." As a result, notice, a pre-termination hearing, and the right to appeal to the Unclassified Appeal Board "were precisely whatDeCecco was entitled to under the constitutional due-process requirements" when he was dismissed for cause. Id. at 1343.
A typical dismissal resulting from a sheriff's own actions might require these procedural due process protections. Id. at 1343. In jurisdictions that apply the "reorganization exception," however, an individual dismissed because of a reorganization or other cost-cutting measure is "not entitled to due process prior to that reorganization *Page 38 
taking effect." Duffy v. Sarault, 892 F.2d 139, 147 (1st
Cir. 1989) (citing Hartman, 636 F. Supp. at 1410) (collecting federal and state cases where no hearing is due despite right to be dismissed only for cause).[38] Procedural due process protections are not provided because the employee does not have a property interest in continued employment where the dismissal is for economic reasons.Hartman, 636 F. Supp. at 1416 ("She possessed such an interest only in terms of a personal attribute type of discharge. . . . With regard to position-directed actions, however, such as reorganizations or furloughs growing out of government's perceived need to conserve funds, she enjoyed no comparable property interest."). "There is no need for the Plaintiff to have an opportunity to present evidence on her job performance since that evidence would not be relevant to the Defendant's decision to abolish her job." Id. at 1411 (citing Ryman v.Reichert, 604 F. Supp. 467, 471 (S.D. Ohio 1985)).[39]
Yet, if a professed municipal reorganization is simply a pretext for terminating an individual for person-specific reasons, the reorganization exception is inapplicable and the parties are entitled to full due process rights. See Duffy, 892 F.2d at 147; Hartman,636 F. Supp. at 1416 ("Courts cannot permit the exception to become a convenient ruse *Page 39 
whereby a government agency, simply by affixing a label, can avoid the necessity for demonstrating `cause' when it wishes to dismiss a particular employee"); Day, 338 F. Supp. 2d at 317; Garrett v.Barnes, 961 F.2d 629, 634 (7th Cir. 1992) ([T]his exception only applies if the governmental reorganization is "legitimate."); Misek,783 F.2d at 101 (municipality cannot "cry `reorganization' in order to circumvent . . . constitutional and statutory protections"); State ex rel. Thein v.City of Milwaukee, 229 Wis. 12, 12, 281 N.W. 653, 655-56 (1938) (an employee generally can attack the legitimacy of a reorganization by showing that no reorganization actually occurred or that it was done in bad faith.)
It should be noted that the Sixth Circuit has not recognized the reorganization exception and provides a hearing for a dismissed employee to contest both the extent of the governmental body's financial woes and the reasons that employee has been specifically chosen as part of the reduction. Johnston-Taylor v. Gannon, 907 F.2d 1577, 1581-82. Although the Rhode Island Supreme Court has not had the opportunity to decide whether to accept the reorganization exception, it has acknowledged the distinction between person-directed personnel actions and position-directed personnel actions. Bergeron v. Batchelor, 46 R.I. 224,229, 124 A. 291, 292-93 (1924) (procedural due process rights were properly denied to policemen who "were not demoted for any fault or lack of efficiency" and where the Board, pursuant to statutory authority, "acted in good faith with the purpose of promoting the economical and efficient administration of the police department"). In addition, the District Court in Hartman has predicted that our high court would adopt the exception if called upon to do so. 636 F. Supp. at 1415 ("The court concludes that Rhode Island, if and to the extent that it has not already done so, will *Page 40 
adopt the reorganization/furlough exception to the "no dismissal except for cause" rule with respect to non-tenured public employees. . . .").
This Court finds that the reorganization exception is clearly the better rule. Indeed, "common sense counsels that such an exception must exist. . . . [A]ny other construction . . . would paralyse the ability of . . . officials to govern and administer." Id. In addition to the efficiencies created by the reorganization exception, due process rights are still protected where the employee contends that his or her dismissal was in bad faith or pretextual. See id. at 1416;Duffy, 892 F.2d at 147; Day, 338 F. Supp. 2d at 317.
The Sheriffs have made no assertion that the Governor's proposed lay off action is pretextual or in bad faith. In fact, as noted previously, the Statement of Undisputed Facts indicates the Sheriffs' agreement that the proposed lay offs are in response to Rhode Island's fiscal crisis. Under the reorganization exception, therefore, the Sheriffs do not have a property right that would trigger procedural due process protections, as it is undisputed that they are being laid off for legitimate financial reasons. As such, there is no constitutional bar, under either the state or federal constitutions, to the exercise of the Governor's inherent power to lay off the Sheriffs.
 D. Lay Off Versus Job Abolishment
Even assuming that the Governor, acting through the Department of Administration, has the inherent power to lay off executive branch employees, the Sheriffs argue that the Department of Administration intends to abolish, rather than simply lay them off from, their current positions. As § 42-29-1 requires the Department of Administration to appoint county and chief deputy sheriffs to ten year terms, they *Page 41 
argue that, once appointed, the Governor and the Director of the Department of Administration, pursuant to the dictates ofEaton, may not eliminate or abolish those positions without legislative approval.
The defendants respond that their proposed action does not constitute an elimination or abolishment of the Sheriffs' positions but, at least as to all of the Sheriffs except the Sheriff of Kent County, is simply a temporary lay off of the Sheriffs from their positions for an indefinite time period for reasons of economy. Even if they were to abolish the Sheriffs' positions through reorganization of the Division of Sheriffs or subcontracting, defendants argue that they would not be precluded from doing so under Eaton.
A job elimination occurs where an office no longer exists.Geraghty v Berkeley Heights, 259 N.J. Super. 350 (N.J. 1990) (plaintiff's position as treasurer was abolished because it was combined with the tax collector to make one position of treasurer/tax collector).[40] In contrast, the lay off of an office holder does not permanently eradicate the office, and it may be refilled at a later date. See Casey v. Sundlun, 615 A.2d 481, 482 (R.I. 1992) (Where a Sheriff is not reappointed, the position is not "abolished. . . .through reorganization or otherwise" because an abolishment occurs where "the government eliminates an entire job, not where a state employee's particular service in that job *Page 42 
terminates."); see also Anderson, 625 A.2d at 216 ("The term in no way depended upon who or how many persons occupied the office during that term").[41]
As this Court has already ruled, the Governor does have the authority to lay off these unclassified executive branch officer holders for fiscal reasons. At this time, the Sheriffs have been given notice of lay off from their positions or are under threat of lay off. No reorganization of the Division of Sheriffs or elimination or subcontracting of their positions, while perhaps contemplated, has occurred. The lay offs, albeit for an indefinite time period, may end when there is no longer a fiscal crisis. The Sheriffs who are laid off will be placed on a reemployment list from which they could be recalled to finish their terms of office. No other individuals will fill those positions. As a result, the Governor has not effectuated any actual or de facto abolishment of their offices. See Anderson, 625 A.2d at 216;Casey, 615 A.2d at 482. This Court thus declines to address the abstract question of whether the Governor can abolish these executive branch positions for fiscal reasons without legislative action — through elimination of functions, reorganization or subcontracting — where the statute may mandate those positions and where they are filled by appointees for a term of years, subject to removal for cause. See Statev. Lead Industry Association, 898 A.2d 1234, 1238 (R.I. 2006) (It is not the proper role of the Court to "issue advisory opinions or rule on abstract questions."). *Page 43 
 E. The Remedy
For the reasons stated in this Decision, this Court declares that the Governor has the inherent power under the Rhode Island Constitution and state law to lay off the Sheriffs for fiscal reasons for an indefinite time period, notwithstanding their appointment under § 42-29-1 to ten year terms of office, subject to removal for just cause. In so declaring, this Court opines only as to the extent of the Governor's power but expresses no view as to the wisdom of its exercise. It is not the role of this Court to question the prerogative of the Governor to address the fiscal crisis of this State, at least in part through the lay off of the Sheriffs, as long as it is sanctioned by law.
Consistent with the notices previously given to the Sheriffs by the Department of Administration, the Statement of Undisputed Facts and the agreement of the parties, Chief Deputy Sheriffs Macari, Grant and Silva, as well as Sheriff Ford, may be placed on lay off status, effective as of the date of entry of judgment following issuance of this Decision. These layoffs are for an indefinite time period (i.e., the undetermined duration of economic reasons justifying the job action prior to expiration of their terms of appointment). As the parties have agreed, the Sheriffs who are laid off will be placed on a reemployment list and their positions will not be filled by other individuals. As no definitive action has yet been taken to lay off Sheriff Castelli or abolish her position, her claim is not yet ripe for judicial review and is dismissed.
The lay offs of these Sheriffs do not constitute the abolishment of their offices nor are the lay offs tantamount to the abolishment of the positions, as the offices remain available to be filled, pursuant to § 42-29-1, by the Sheriffs or others upon the cessation *Page 44 
of the budget crisis. The question of whether the positions held by the Sheriffs may be subcontracted or eliminated is reserved for another day, as no such action has yet been taken.
Accordingly, plaintiffs' request for a declaration by this Court that the defendants are obligated under § 42-29-1 to maintain them in their present positions, absent just cause for removal, is denied. Plaintiffs' similar requests for a writ of mandamus and injunctive relief to prevent their lay offs are likewise denied. Judgment shall enter, therefore, in favor of the defendants as to all counts of plaintiffs' complaint.
Counsel shall confer and submit to this Court forthwith for entry an agreed upon form of order and judgment that is consistent with this Decision.
[1] See R.I.G.L. § 42-11-21. It is the duty of the Department of Administration to operate the Division of Sheriffs. Id. § 42-11-2(29). Moreover, the Department of Administration is responsible for preparing a budget for the several state departments and agencies, subject to the direction and supervision of the Governor, and to administer the budget for all state departments and agencies, except where exempted by law.Id. §§ 42-11-2 (1), (2). The Division of Sheriffs is not exempt from such budgetary oversight.
[2] The duties of plaintiffs Grant, Macari and Silva, as Chief Deputy Sheriffs, primarily consist of management and administrative functions within the Office of the Executive High Sheriff. Stmt of Undisputed Facts ¶ 30. These duties include the oversight of radio communications, vehicles, attendance records, personnel matters, detail and duty lists, purchasing and record keeping, and the investigation of personnel complaints. Id. The County Sheriffs are usually assigned tasks and functions necessary to ensure the proper management of the Sheriff's Division. Currently, the County Sheriffs are assigned supervisory and administrative functions, including oversight of day-to-day operational and staffing issues and ensuring compliance with all directives and policies issued by the Executive High Sheriff. Id. ¶ 31.
[3] At the inception of this litigation, defendant Beverly E. Najarian served as Director of the Department of Administration. As of March 14, 2008, Jerome F. Williams replaced her as the Director of the Department of Administration. At the request of the defendants, and without objection by plaintiffs, this Court thus ordered substitution of Jerome F. Williams for Beverly E. Najarian as a party defendant in this action.See Order dated April 3, 2008.
[4] These other individuals consist primarily of employees in the classified service. The Sheriffs appear to be the only unclassified employees with fixed terms subject to lay off.
[5] Plaintiff Jo-Ann Macari was appointed Chief Deputy Sheriff on December 2, 2001, pursuant to R.I.G.L. § 42-29-1, with a starting base pay of $41,321.00 and a total starting salary of $49,025.70, including $403.00 in education incentives and a 17.5% longevity bonus of $7,301.70. Prior to taking this position, Sheriff Macari held the position of Deputy Sheriff II, with a base salary of $33,060.00 and a total starting salary of $39, 319.03, including $403.00 in education expenses and a 17.5% longevity bonus of $5,856.03. Stmt of Undisputed Facts ¶¶ 7, 8.
[6] Rhode Island law excludes from statutory tenure protection "employees of the state government whose method of appointment and salary and term of office is specified by statute." R.I.G.L. § 36-4-59(a)(2)(iii). The Rhode Island Supreme Court has interpreted this statute expansively, finding that it excludes from statutory tenure protection those employees whose term of office alone is specified by statute. Donnelly v. Almond, 695 A.2d 1007, 1009 (R.I. 1997) (holding that plaintiff, a sheriff's deputy who claimed statutory tenure as a veteran under R.I.G.L. § 36-5-7, did not have full status in his position because his term of office was "specified by statute") (quotingR.I. Pub. Telcomms. Auth. v. Russell, 914 A.2d 984, 991 (R.I. 2007));see also Hawkins v R.I. Lottery Comm'n, 238 F.3d 112, 114
(1st Cir. 2001) ("It is evident that the Rhode Island court has construed the exception to the general tenure provision as excluding any unclassified employee whose term of office is addressed in another statute.").
[7] Plaintiff James Grant was appointed Chief Deputy Sheriff on December 2, 2001, pursuant to R.I.G.L. § 42-29-1, with a starting base pay $41,321.00 and a total starting salary of $43,387.05, including a 5% longevity bonus of $2,066.05. Before taking this position, Sheriff Grant held the position of Deputy Marshal, with a total salary of $39,577.00. As a Deputy Marshal, Grant was a member of a labor organization with a collective bargaining agreement that entitled him to bumping rights in the event of a lay off. Stmt of Undisputed Facts ¶¶ 5, 6.
[8] Plaintiff Daniel Silva was appointed Chief Deputy Sheriff on December 2, 2001, pursuant to R.I.G.L. § 42-29-1, with a starting base pay of $41,321.00. Before becoming a Chief Deputy Sheriff, Silva was not a state employee. Stmt of Undisputed Facts ¶¶ 9, 10.
[9] Rhode Island General Laws § 42-11-21 provides, in pertinent part:
 (1) The division of sheriffs shall have the following powers and duties:
 (i) To provide and maintain security for judges at all state courts;
 (ii) To provide and maintain security in all courtrooms and other public areas within state courthouses;
 (iii) To provide and maintain security in the cellblocks in all state courts.
 (2). . . .
 (i) To be responsible for transportation statewide of prisoners to and from police departments, the adult correctional institutions, all courthouses, and other places of detention.
[10] Plaintiff Joseph Ford was appointed Newport County Sheriff on December 2, 2001, pursuant to R.I.G.L. § 42-29-1, with a starting base pay of $50,040.00 and a total salary of $60,878.40, including $692.00 in education incentive pay and a 20% longevity bonus of $10,146.40. Before taking this position, Sheriff Ford held the position of Deputy Sheriff II, with a base starting salary of $33,060.00 and a total starting salary of $40,502.00, including $692.00 in education incentives and a 20% longevity bonus of $6,750.40. As a Deputy Sheriff II, Sheriff Ford was a member of a labor organization with a collective bargaining agreement that entitled to him to bumping rights in the event of a lay off. Stmt of Undisputed Facts ¶¶ 3, 4.
[11] See n. 6, supra.
[12] Plaintiff Ann M. Castelli was appointed Kent County Sheriff on December 2, 2001, pursuant to R.I.G.L. § 42-29-1, with a starting base pay of $50,040.00 and a total starting salary of $52,542.00, including a 5% longevity bonus of $2,502.00. Before this appointment, Sheriff Castelli had been appointed to serve out the remaining thirteen months of the prior sheriff's unexpired ten year term of office. See Andersonv. Sundlun, 625 A.2d 213, 215 (1993). Before taking this position, Sheriff Castelli held the position of Deputy Sheriff II, with total compensation of $30,862.00. As a Deputy Sheriff II, Castelli was a member of a labor organization with a collective bargaining agreement that entitled to her to bumping rights in the event of a lay off. Stmt of Undisputed Facts ¶¶ 1, 2.
[13] See, e.g., Communications Workers of America. v. Florio,617 A.2d 223, 235-36 (N.J. 1992) (citing Geraghty v. Berkeley Heights,613 A.2d 497, 500 (N.J.Super. 1992)); Hennessey v. Bridgeport, 569 A.2d 1122,1125 (Conn. 1990) (citing Perretta v. New Britain, 440 A.2d 823, 829
(Conn. 1981)); McNea v. Voinovich, 70 Ohio St. 2d 117, 118,435 N.E.2d 420, 422 (Ohio 1982) (citing Gannon v. Perk, 46 Ohio St. 2d 301, 313,348 N.E.2d 342, 350 (Ohio 1976); State, ex rel. Buckman, v. Munson,141 Ohio St. 319, 326, 48 N.E.2d 109, 113 (Ohio 1943)); Indianapolis v.State ex rel. Kennedy, 224 Ind. 600, 608, 70 N.E.2d 635, 638 (1947);Calumet City Professional Firefighters Ass'n v. Stefaniak,612 N.E.2d 29, 31-32 (Ill.App. 1993) (citing Kennedy v. City of Joliet,380 Ill. 15, 21, 41 N.E.2d 957, 960 (1942)).
[14] See Hennessey, 569 A.2d at 1125 (Conn. 1990) (the Bridgeport Mayor's authority under the City Charter as Chief Executive Officer and the responsibility to "recommend the adoption of all such measures connected with the policing, security, health, cleanliness, and ornament of the city, and the improvements of its government and finances as he shall deem expedient" was sufficient to authorize the Mayor to lay off city employees); Perretta, 440 A.2d at 829 ("the mayor's authority to lay off city employees . . . will be implied as necessary to the execution of his public duties as New Britain's chief executive officer"); Gannon, 46 Ohio St. 2d at 313, 348 N.E.2d at 350 (where the Cleveland City Charter made the Mayor the "Chief Executive Officer" and vested the Mayor with the City's "executive and administrative powers" and the responsibility to "supervise the administration of the affairs of the City," the Ohio Supreme Court found sufficient authority for the Mayor to have the discretion to lay off city employees);Calumet, 612 N.E.2d at 31-32 (where the Calumet City Charter established the Mayor as "the chief executive officer of the city" and bestowed upon him "supervision over all of the executive officers and employees of the city," the Illinois Supreme Court ruled that the Mayor has the inherent authority to lay off public employees for purposes of economy).
[15] Section 51.5 of the Charter of the City of Bridgeport states that the Mayor "shall appoint an administrator for humane affairs for a term of four years;" section 31 provides that "[a]ll officers of the town and city shall hold their respective offices during the terms for which they shall be chosen . . . except in case of their prior death, resignation, or removal from office." Hennessey, 569 A.2d at 1125.
[16] See also Perretta v. New Britain, 440 A.2d 823, 829 (Conn. 1981) ("In the absence of any charter provision limiting the mayor's authority to lay off city employees, that authority will be implied as necessary to the execution of his public duties as New Britain's chief executive officer."). By analogy, in the absence of a constitutional limitation on a governor's authority to lay off executive branch employees, that authority would be implied as essential to the exercise of his or her power as chief executive.
[17] See Gannon, 46 Ohio St. 2d at 313, 348 N.E.2d at 350 (where the Cleveland City Charter made the Mayor the Chief Executive Officer and vested the Mayor with the City's "executive and administrative powers" and the responsibility to "supervise the administration of the affairs of the City," the Ohio Supreme Court found sufficient authority for the Mayor to have the discretion to lay off city employees who may be dismissed only for cause, where there were no charter provisions or ordinances detailing a mandatory priority for lay offs);Calumet, 612 N.E.2d at 31-32 (where no statutes attempt to direct the method of dismissals for fiscal reasons, the Mayor may lay off freely).
[18] The Supreme Court, in In Re State Employees Union, also identified R.I.G.L. § 35-3-16 (1990) as a source of the Governor's inherent authority to furlough state employees. 587 A.2d at 924. That statute, which has since been repealed, authorized the Governor to reduce or suspend appropriations for all executive departments to maintain a balanced budget. It stated, in pertinent part, as follows: At any time during the fiscal year, upon notification by the budget officer that it is indicated that actual revenue receipts or resources will not equal the original estimates upon which appropriations were based or that it is indicated that spending will exceed appropriations, the governor, for the purpose of maintaining a balanced budget, shall have the power to reduce or suspend appropriations for any or all departments or subdivisions thereof, excepting the general assembly, legislative agencies and legislative committees and commissions. R.I.G.L. § 35-3-16
(repealed 1997).
[19] This amendment provides that "[a]ny department, office, board, commission or other state or quasi-pubic entity which exercises executive power is under the supervision of the Governor." R.I. Const. art. IX., § 5. The heads of those executive branch entities shall be appointed by the Governor, with the advice and consent of the Senate, subject to the power of the General Assembly to vest the appointment power of inferior officers in the Governor, the other general officers, the judiciary or heads of departments. Id.
[20] See R.I.G.L. § 35-3-2 (providing that the General Assembly shall annually appropriate such sums as it may deem necessary to pay the administration and expenses of state government).
[21] The Governor has the constitutional obligation to prepare and present to the General Assembly an annual consolidated operating and capital improvement budget. R.I. Const. art. IX, § 15. The Constitution now requires that the budget submitted and enacted be in balance — meaning that "no appropriation, supplemental appropriation or budget act shall cause the aggregate state general revenue appropriations enacted in any given fiscal year to exceed ninety-eight percent of the estimated general revenues for such fiscal year. . . ." Id. § 16; see also
R.I.G.L. § 35-3-20.1. It necessarily follows, given the Governor's constitutional responsibility to administer the state budget, that he is empowered to reduce expenditures in the event of declining revenues to keep the budget in balance and to pave the way for submission of a balanced budget in the next budget cycle.
[22] The Rhode Island General Assembly first enacted § 42-29-1 in 1939 and re-enacted it in substantially the same format in 1956. The 1939 and 1956 statutes provided in part that "[t]here shall be a sheriff for each county, each of whom shall be appointed by the governor and shall holdoffice at his pleasure and until a successor is appointed andqualified." See P.L. 1939, ch. 660, § 16, R.I.G.L. § 42-29-1 (1939); P.L. 1956, ch. 3721, § 1, R.I.G.L. § 42-29-1 (1956).
The Legislature next amended § 42-29-1 in 1978. The 1978 amendment stated that sheriffs for each county "shall be appointed by the governor and shall hold office for a period of ten (10) years, provided however said sheriffs in office as of February 1, 1978 shall hold office withoutfurther appointment for a period of ten (10) years. . . ." This amendment removed the ability of the Governor to terminate the Sheriffs at his pleasure and provided that "[s]sheriffs and deputies may beremoved for just cause by their appointing authority." See P.L. 1978, ch. 332, § 1, R.I.G.L. § 42-29-1 (1978).
The General Assembly further amended § 42-29-1 in 1981. This amendment introduced new appointment language to the statute. The county sheriffs still were appointed to hold office "for a period of ten (10)year;" however, the occupant of the newly created office of deputy high sheriff for Providence County was appointed to "a term of tenyears." The 1981 amendment also stated that the current sheriffs and theDeputy High Sheriff for Providence County "shall hold office withoutfurther appointment for a period of ten years." See P.L. 1981, ch.422, § 1, R.I.G.L. 42-29-1 (1981).
The most recent amendment to § 42-19-1 occurred in 2001. The 2001 amendment brought the Sheriff's Division under the control of the Department of Administration. Now, the Director of the Department of Administration, with the consent of the Governor, appoints all of the sheriffs. The amendment also created the position of "administrator" to be in charge of the Division of Sheriffs within the Department of Administration and an executive high sheriff to assist the administrator. It added positions for each of the counties of an undefined number of sheriffs and chief deputy sheriffs. The 2001 amendment also altered the appointment language for any administrators, executive high sheriffs, sheriffs and chief deputy sheriffs appointed after February 1, 2001, providing for their appointment to "a ten yearterm;" instead of providing that they "shall hold office . . . for aperiod of ten years." According to the amendment, those county sheriffs and the Deputy High Sheriff of Providence County in office as of February 1, 2001 "shall continue to hold office until their present termexpires." The amendment further granted the Director the power to appoint all deputy sheriffs and other necessary classifications subject to the appropriations process. It left intact the language that the "sheriffs and deputies" can be removed for cause. See P.L. 2001 ch.77, § 2, R.I.G.L. § 42-29-1.
[23] When interpreting statutory provisions, the Court must ascertain and effectuate the intent of the Legislature. Vaudreuil v. NelsonEngineering and Const. Co., Inc., 399 A.2d 1220, 121 R.I. 418 (R.I. 1979). The Court first should examine the plain meaning of the statute.Gem Plumbing ad Heating v. Rossi, 867 A.2d 796, 811 (R.I. 2005). If the statute is susceptible to more than one interpretation, the Court should examine the statute in its entirety and in conjunction with related statutes and its legislative history to attempt to understand its meaning. Id . . The Court should avoid construing the statute in a manner that would produce an absurd result or defeat its legislative purpose. Commercial Union Ins. Co. v. Pelchat, 727 A.2d 676 (R.I. 1999).
[24] This Court will assume, without deciding, that the phrase "sheriffs and deputies," as used in § 42-29-1, includes both county sheriffs and chief deputy sheriffs, such that all of those categories of sheriffs are subject to removal for cause. It makes this assumption because resolution of this issue is not necessary for this Decision.
Defendants argue, to the contrary, that the term "sheriffs and deputies," as used in the statute, includes the county sheriffs but does not include the chief deputy sheriffs. They contend that had the Legislature intended to subject the chief deputy sheriffs to the removal for cause provision of the statute, it would have broadened that provision at the time it created those positions in 2001 beyond "sheriffs and deputies" to include "sheriffs, deputies and chief deputy sheriffs." Absent this amendment, they argue that the county sheriffs may be removed for just cause but that the chief deputy sheriffs serve at the pleasure of the Governor and thus may be removed for any reason. Defendants rely on "[t]he long-standing rule in the context of federal appointments . . . that in the absence of specific provision to the contrary, the power of removal from office is incident to the power of appointment." See Humphrey's Executor, 295 U.S. 602, 631-632 (1935);Pievsky v Ridge, 98 F.3d 730, 734 (3rd Cir 1996).
The Sheriffs counter that the Rhode Island Supreme Court calls for a more comprehensive approach than the federal courts in determining legislative intent. See Arnold v. Lebel, 2007 R.I. LEXIS 135, 11 (R.I. 2007) ("When language of a statute can be given more than one interpretation, `legislative intent must be gathered from the entire statute and not from an isolated provision.'") (citing State v.Caprio, 477 A.2d 67, 70 (R.I. 1984)). They argue that the history and language of § 42-29-1 supports the conclusion that the term "sheriffs and deputies," as used in conjunction with the "just cause for removal" provision, includes chief deputy sheriffs such that they do not serve at will. According to the Sheriffs, if the Legislature had intended to characterize chief deputy sheriffs as at will employees, it simply would have reinstated the language that they serve "at the Governor's pleasure" that was contained in the pre-1978 version of § 42-29-1. Additionally, the Legislature, in the recent 2001 amendment to the statute, would not have provided for the appointment of the chief deputy sheriffs to a specific term of years. See DeCecco, 593 A.2d at 1343-1344
(stating that "[u]nclassified employees appointed to a term of years enjoy a "greater panoply of rights than . . . most unclassified employees, who serve at will").
Moreover, according to the Sheriffs, the Rhode Island Supreme Court has taken a liberal and inclusive view of the term "sheriffs and deputies" in the statute. In DeCecco, the Court found that this phrase included the position of the Deputy High Sheriff for Providence County, even though that position was not mentioned explicitly in the removal for cause provision. 593 A.2d at 1344. In Donnelly v Almond,695 A.2d 1007, 1009 (R.I. 1997), the Court found that the term "sheriffs and deputy sheriffs" as used in R.I.G.L. § 36-4-2(13) (1956) applied to Chief Deputy Sheriffs. The language in that statute — "sheriffs and deputy sheriffs" — is substantially similar to the "sheriffs and deputies" phrase employed in the current version of § 42-29-1(b).
[25] Significantly, the General Assembly has never seen fit to expressly bar the lay off of employees appointed under § 42-29-1, even in the wake of the Supreme Court's decision in In Re State EmployeesUnion (which upheld the Governor's power to shut down the executive branch of state government and furlough executive branch employees).
[26] "When the Legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." Sutherland Stat. Const. § 46:6 (4th ed.); see also United States v. Ahlers, 305 F.3d 54,60-61 (1st Cir. 2002) ("It is accepted lore that when Congress uses certain words in one part of a statute, but omits them in another, an inquiring court should presume that this differential draftsmanship was deliberate.")
[27] While noting that § 42-29-1 seemingly extends extra protection to those county sheriffs and the chief deputy sheriff in office as of February 1, 2001, this Court does not reach the question of whether such language insulates these sheriffs from lay off for fiscal reasons.
[28] See Simeone v. Charron, 762 A.2d 442 (R.I. 2000) ("A well-established tenet of statutory interpretation posits that the Legislature is `presumed to know the state of existing law when it enacts or amends a statute.'") (citing Providence Journal Co. v.Rodgers, 711 A.2d 1131, 1134 (R.I. 1998)); see also Romano v. Duke,111 R.I. 459, 462, 304 A.2d 47, 49 (1973) ("We presume that the Legislature is familiar with the construction we have given the phrase `personal expenses' in suits brought under the earlier versions of our wrongful death statute.").
[29] A prohibition on removal of the Sheriffs for financial reasons likewise cannot be implied from the provision of the statute making the appointment of "deputy sheriffs and other necessary classifications, subject to the appropriations process." § 42-29-1. While the Sheriffs suggest that this language implies that the appointment of county sheriffs and chief deputy sheriffs, unlike deputy sheriffs and others, is not subject to the appropriations process, this Court disagrees. The "appropriations" language in the statute merely indicates a legislative intent to allow for the creation of lower level positions in the Sheriff's Division — in addition to the offices of administrator, executive high sheriff, county sheriff and chief deputy sheriff that are created by the statute — subject to legislative funding. Absent such funding, that language bars the Department of Administration from creating those lower level positions. However, the language does not suggest that the positions held by the Sheriffs are not subject to appropriation or that the Governor is barred from laying off the Sheriffs, even after appropriations to fund their positions are made by the Legislature, in the event of a budget crisis.
[30] See also McNea v. Voinovich, 70 Ohio St. 2d 117,118,435 N.E.2d 420, 422 (Ohio 1982) (citing Gannon, 46 Ohio St. 2d at 313,348 N.E.2d at 350 (where the Cleveland City Charter made the Mayor the "Chief Executive Officer and vested the Mayor with the City's "executive and administrative powers" and the responsibility to "supervise the administration of the affairs of the City," the Ohio Supreme Court found sufficient authority for the Mayor to have the discretion to lay off city employees who may be dismissed only for cause); Indianapolis v.State ex rel. Kennedy, 224 Ind. 600, 608, 70 N.E.2d 635, 638 (1947) ("[A]s a general proposition, they are not subject to being dismissed from the service except for cause, and then after a hearing on proper notice. This rule is subject to the exception, however, that the membership of the police department may be reduced for economic reasons.") (quoting Shira v. State, 187 Ind. 441, 444, 119 N.E. 833, 834
(1918)); Calumet, 243 Ill. App. 3d at 257, 612 N.E.2d at 31 (An act requiring cause for dismissal "is not intended to impinge upon a city's inherent right to make good-faith reductions in force for solely economic reasons.") (quoting Kennedy v. City of Joliet, 380 Ill. 15, 21,41 N.E.2d 957, 960 (1942)).
[31] See also Calumet, 612 N.E.2d at 31 (Ill.App. 1993) (A statute that limits the ability to suspend or discharge an employee does not affect "the inherent right to discharge or lay off employees in good faith because of lack of work or for purposes of economy. . . ." Such power "exists independently of the provisions of the statute" limiting dismissal to just cause.) (quoting Kennedy, 380 Ill. at 21,41 N.E.2d at 960).
[32] This rule had its genesis in a decision of the United States Court of Appeals for the Seventh Circuit that determined that there is an exception to the right to a procedural due process hearing in connection with a termination of employment when the discharge is caused by reorganization. Misek v. Chicago, 783 F.2d 98, 100
(7th Cir. 1998); see also Duffy v. Sarault, 892 F.2d 139,147 (1st Cir. 1989) ("Where a reorganization or other cost-cutting measure results in dismissal of an employee, no hearing is due"). In Hartman, the Court used the furlough/reorganization exception to speak not only of an absence of due process protections for a government employee laid off for fiscal reasons, but also to justify that lay off where the employee was subject to removal only for just cause. 636 F. Supp at 1416.
[33] Section 904 of the Providence City Charter provides that "[r]egular employees shall not be dismissed except for cause."
[34] See also May v. Board of Comm'rs of Town of Nutley,111 N.J.L. 166, 168, 168 A.141-42 (N.J.Super.Ct. 1933) (upholding the right of a municipality to prematurely terminate an office whose occupant was appointed to a term of years by ordinance); Paddock v. HudsonCounty, 82 N.J.L. 360, 361; 83 A. 185, 186 (1912) ("The very spirit of good government intends that useless offices drawing revenue from a municipality or state should be abrogated, and it would be regarded as a betrayal of a solemn trust, for a body politic to convert offices contemplated under the civil service law into sinecures or pension places"); Miskowitz v. Union County Utilities Authority, 764 A.2d 455,457 (N.J.Super. App. Div 2001) (upholding the right of a municipal authority to prematurely terminate five year fixed term employment contracts with public employees for economic reasons where the Legislature had authorized the five year terms).
[35] Although the authority to abolish positions for the public good is codified in the "Faulkner Act," N.J.S.A. 40:69A-29(a), New Jersey courts have recognized it as a legislative acknowledgement of a pre-existing right. See McCartney v. Franco, N.J. Super. 292, 297,209 A.2d 329, 332 (N.J.Super. 1965) ("The Faulkner Act did not take away the established right of a municipality to abolish offices or positions, when the action is adopted in good faith to effect economy, to provide greater efficiency or otherwise promote the public interest. Rather, this statute, N.J.S.A. 40:69A-29(a), expressly confirms the power of each municipality.").
[36] Even assuming, arguendo, that this Court were to find that the Legislature, in enacting § 42-29-1, constrained the inherent power of the Governor to lay off the Sheriffs for financial reasons by providing for their appointment to ten year terms, subject only to removal for just cause, it then would have to decide whether the concept of just cause includes fiscal reasons or whether it is limited, as the Sheriffs suggest, to circumstances that would disqualify the Sheriffs from continuing their jobs (such as misconduct or incapacity). As discussed previously, most courts, like this Court, have held that government employees may be laid off for fiscal reasons without violating charter or statutory provisions barring their removal except for just cause.See generally 4 Eugene McQuillin Municipal Corporations § 12.246 (3rd ed. 1996) (government officials may dismiss government employees for reasons of economy without violating statutory charter provisions barring removal except for cause).
There is some indication that the Rhode Island Supreme Court would follow this logic. See In Re State Employees, 587 A.2d at 923 (allowing furlough of state employees for fiscal reasons based on inherent power of the Governor); Wilkinson v. State Crime Laboratory, 788 A.2d 1129,1138 (2002) (the Supreme Court differentiated a "lay off" from a "for cause dismissal" when it stated that a "for the good of the service" termination in R.I.G.L. § 36-4-38 would exist where "the state determines that cause exists to terminate the employee or that it is necessary to lay off, reorganize or otherwise abolish a classified employees position"); but see id. at 1139 ("[T]he definition of what constitutes cause . . . is altered [once the employee achieves full status]. . . .For example, a full status employees may not be separated from state service because of lay offs or reorganizations.").
Indeed, in Massachusetts, the courts have found that "[l]ack of money is just cause for a layoff." Commissioner of Health and Hospital v.Civil Service Commission, 23 Mass. App. Ct. 410, 413; 502 N.E.2d 956,958; (Mass.App. 1987); see Debnam v. Belmont, 388 Mass. 632, 634,447 N.E.2d 1237, 1239 (Mass. 1983) ("either lack of work or lack of money is a `just cause' for lay off"); William J. Dooling v. Fire Commissioner ofMalden, 309 Mass. 156, 161; 34 N.E.2d 635, 338 (1941).
In addition, legions of Rhode Island Superior Court cases (all involving tenured teachers terminated for fiscal reasons) have found that financial exigency constitutes "just cause." See Arnold v Board ofRegents, 1987 R.I. Super. LEXIS 83 (R.I.Super. 1983); Bouchner vProvidence School Committee, 1982 R.I. Super. LEXIS 50 (R.I.Super. 1982); Stiefer v School Committee of New Shoreham 1980 R.I. Super. LEXIS 43 (R.I.Super. 1980); Long v Board of Regents for Education,1979 WL 196176 (R.I.Super. 1979).
This Court must construe the law in a manner that avoids "absurd or unreasonable results." Asadoorian v. Warwick School Committee,691 A.2d 573, 580 (R.I. 1997). With this canon of statutory construction as a guidepost, this Court finds that, in the absence of the inherent power of the chief executive to dismiss executive branch employees appointed to a fixed term and subject only to removal for cause during a fiscal crisis, the crisis itself must constitute just cause. To find otherwise would lead to an absurd result, namely that the State "would be hamstrung in its efforts to streamline. . . . government or to adjust to changing times" in the midst of a financial crisis. Hartman,636 F. Supp. at 1416.
[37] A procedural due process claim is also cognizable where a person's good name, reputation, honor or integrity is at stake because of termination of employment, and the government does not provide that person an opportunity to participate in a name clearing hearing.Board of Regents v Roth, 408 U.S. 564, 573 (U.S. 1972). Here, the Sheriffs are being laid off exclusively for economic reasons. As a result, these lay offs do not implicate their good name, reputation, honor or integrity, such that any procedural due process claim premised on these grounds must fail.
[38] See also Misek v. Chicago 783 F.2d 98, 101 (7th
Cir. 1986) ("There is an exception to a hearing right when the discharge is caused by reorganization" unless the dismissal is a "pretext.");Day v City of Providence, 338 F. Supp. 2d 310, 317 (D.R.I. 2004) ("There is a well-established `reorganization exception' to the requirement that an employee receive a pre-termination hearing: Where a reorganization or other cost-cutting measure results in dismissal of an employee no hearing is due. . . . However, if a purported municipal reorganization is merely a pretext for terminating an individual for other, discriminatory reasons, the reorganization exception is inapplicable.") (citations omitted); Dane County v. McCartney, 166 Wis. 2d 956, 963-64,480 N.W.2d 830, 833-34 (Ct.App. 1992) (holding that an elimination of a position pursuant to a reorganization does not entitle employee to due process).
[39] See also Digiacinto v. Harford County, Md., 818 F. Supp. 903, 906
(D. Md. 1993) (where an employee's termination is unrelated to his or her job performance, any kind of process meant to evaluate that performance would be superfluous); Goldsmith v. Mayor City Council ofBaltimore, 845 F.2d 61, 65 (4th Cir. 1988) (due process in the context of a reorganization would amount to an unreasonable hindrance for government entities seeking to adapt their staffing needs to changing conditions).
[40] An example of a job abolishment is found in the Rhode Island State Marshals, whose offices were abolished statutorily in their 2001 merger with the Sheriffs' Department. See P.L. 2001 Ch. 77, Art. 29, R.I.G.L §§ 42-11-21, 42-56-3, 42-56-4, 42-56-36, 42-28.6-1; see generallyState of Rhode Island (Department of Administration) v. R.I. Council 94,A.F.S.C.M.E., AFL-CIO, 925 A.2d 939 (R.I. 2007) (The Act "established a Division of Sheriffs (division) within the Department of Administration. . . .the division was vested with the powers and duties previously performed by the Rhode Island Sheriffs and Marshals").
[41] In fact, where a Sheriff office is vacated, it subsists and the ten-year term continues to run despite its vacancy. InAnderson, the plaintiff sheriff's predecessor was appointed for the term June 1, 1981 through June 1, 1991. 625 A.2d at 216. On September 12, 1986, the predecessor resigned, and the office sat unoccupied until Anderson's appointment on December 19, 1986,. Id. at 214. Despite the three month period where the office sat vacant, the term of office still expired on June 1, 1991, exactly ten years after Anderson's predecessor was first appointed. Id.