John DeCECCO

v.

The STATE of Rhode Island et al.

No. 90–385–M.P.

Supreme Court of Rhode Island.

June 28, 1991.

David A. Schechter, Howard M. Myers, Law Offices of David A. Schechter, Providence, Thomas Tarro, III, Warwick, for plaintiff.

Ellen Evans Alexander, Sp. Asst. Atty. Gen., Providence, for defendants.

OPINION

KELLEHER, Justice.

This litigation arises from a request for an advisory opinion by Chief Judge Francis J. Boyle of the United States District Court for the District of Rhode Island. The request is made pursuant to Rule 6 of the Supreme Court Rules of Appellate Procedure.

In 1981 the plaintiff, John DeCecco (DeCecco), was appointed by then-Governor J. Joseph Garrahy to the post of deputy high sheriff for Providence County for a ten-year period beginning in March 1981 and terminating in June 1991. However, in late August 1989 the then-Governor Edward D. DiPrete attempted to terminate DeCecco's employment for alleged misconduct that conflicted with DeCecco's law-enforcement responsibilities. Consequently, on October 3, 1989, Governor DiPrete notified DeCecco that he was contemplating removing DeCecco from his position as deputy high sheriff "for the good of the service." The Governor's communication contains certain allegations, most of which relate to DeCecco's alleged associations with known organized-crime figures. The Governor's letter also scheduled a meeting between DeCecco and the Governor's deputy chief of staff, at which time DeCecco was afforded the opportunity to discuss and to refute the allegations.

Although DeCecco appeared with his attorneys at that meeting, he refused to respond or to participate except to deny his partial ownership in a North Providence restaurant. On October 10, 1989, Governor

DiPrete sent a second communication to DeCecco terminating his state employment "for cause." The stated causes included a list of DeCecco's organized-crime associations as well as an affidavit from a Federal Bureau of Investigation agent stating that DeCecco was a participant in a "gambling combine" that operated in Rhode Island and southeastern Massachusetts. The Governor's letter emphasized that such activities were in conflict with section 6.02 of the Personnel Rules of the State and the State Code of Ethics, G.L.1956 (1990 Reenactment) § 36–14–5. The Governor also explained that his actions were taken pursuant to G.L.1956 (1988 Reenactment) § 42–29–1.

On October 10, 1989, the Governor also issued Executive Order No. 89–25, which established an appeals process for persons in the unclassified state service, who were appointed for a fixed term but were discharged prematurely. The order established the Unclassified Appeal Board and provided for an appeal at the request of the discharged person, in accord with all the rules and regulations applicable to the already existing Personnel Appeal Board.

At this point DeCecco chose to file his complaint in Federal Court rather than seek relief through the appellate procedure provided by the Governor. In due course we received from Chief Judge Boyle two questions of law:

1. What remedies, if any, are available to plaintiff to contest his termination as deputy high sheriff?

2. If one of the remedies available to plaintiff is by executive order, is Executive Order No. 89–25 valid?

The plaintiff asserts that the only statutory remedy available to him is to be found in the code of ethics established by the Legislature for state and municipal employees, chapter 14 of title 36. DeCecco takes the position that because the Governor relied in part on DeCecco's conflict with § 36–14–5, the Governor should have utilized the mechanisms set forth in that chapter to remove him from that office. Such mechanisms include reporting any alleged violations to the State Ethics Commission, which is then empowered to investigate and "[i]n extreme cases, recommend to the full commission that the violator be removed from office." Section 36–14–13(e)(5).

The state responds to this assertion by pointing out that DeCecco was entitled to contest his termination pursuant to the provisions of § 42–29–1 and Executive Order No. 89–25. Interestingly enough, § 42–29–1 authorizes the removal from office for just cause of the deputy high sheriff. The procedures provided by the Governor were precisely what DeCecco was entitled to under the constitutional due-process requirements; however, the state argues that the code of ethics does not provide an exclusive remedy for DeCecco to contest his termination.

We believe there is merit to this contention. Section 42–29–1(b) provides that sheriffs and deputies "can be removed for just cause by their appointing authority." Despite the fact that this chapter does not spell out the procedures for removal, it is clear that the Governor, as the appointing authority, has the power to terminate DeCecco's employment for just cause. It is also submitted that beginning with the October 3, 1989 letter, the Governor notified DeCecco at each step of the controversy what his remedies were.

Initially, on October 3, 1989, DeCecco was notified that the Governor was considering discharging him, and the reasons were clearly stated. DeCecco was given an opportunity for an informal pretermination meeting. After that hearing his employment was terminated, and at that time he was notified of his right to appeal in accordance with the procedure outlined in Executive Order No. 89–25. That is, DeCecco was told how he could appeal, the time in which he could appeal, to whom he could appeal, what powers the board hearing his appeal would have, and the fact that the appeal would follow all the rules and regulations employed by the Personnel Appeal Board.

■ Although DeCecco is an unclassified employee, he was appointed for a fixed term. Thus he is entitled to a greater

panoply of rights than are most unclassified employees, who serve at will. *See Salisbury v. Stone,* 518 A.2d 1355 (R.I.1986).

In *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), the United States Supreme Court approved a procedural appeals process for nonprobationary federal employees who could only be dismissed for cause. That procedure included advance written notice of pending termination, the basis for that notice, an opportunity to appear before the official with authority to remove the employee, notice of an adverse decision, and an opportunity to appeal the adverse decision.

In *Arnett* the Court ruled that an employee had a property interest in his job based on his "statutory expectancy" that he could not be removed except for cause. 416 U.S. at 151, 94 S.Ct. at 1643, 40 L.Ed.2d at 32. However, Justice Rehnquist noted that

> "the very section of the statute which granted him that right, a right which had previously existed only by virtue of administrative regulation, expressly provided also for the procedure by which 'cause' was to be determined, and expressly omitted the procedural guarantees which appellee insists are mandated by the Constitution. * * * Where the focus of legislation was thus strongly on the procedural mechanism for enforcing the substantive right which was simultaneously conferred, we decline to conclude that the substantive right may be viewed wholly apart from the procedure provided for its enforcement." *Id.* at 152, 94 S. Ct. at 1643, 40 L. Ed. 2d at 32.

This rationale—that the procedure is adequate if granted along with the right—has since been repudiated, but the same procedural requirements discussed in *Arnett* have since been upheld as constitutional. *See Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). There Loudermill was a classified civil servant who could only be terminated for cause. He was dismissed for dishonesty in filling out his job application. He was not afforded the opportunity to respond to the charge or to challenge his dismissal.

The majority in *Loudermill* held that although due process requires some form of pretermination hearing, it need not be a full evidentiary hearing. 470 U.S. at 545, 105 S.Ct. at 1495, 84 L.Ed.2d at 506. A tenured public employee is entitled, before being terminated, to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story [either in person or in writing]." *Id.* at 546, 105 S.Ct. at 1495, 84 L.Ed.2d at 506. Such an employee is also entitled to a full post-termination hearing.

■ As noted earlier, DeCecco was offered these same procedures. The fact that the Governor explained the procedures in letters and in an executive order does not diminish the fact that DeCecco was fully apprised of them.

■ Finally it should be noted that De-Cecco's argument that the only remedy available to him was by means of the State Ethics Commission has little merit. Although DeCecco's alleged violation of the ethics code was one basis for his dismissal, it was not the only ground. Moreover, although the ethics commission has authority in appropriate cases to remove an official from office pursuant to § 36–14–14, this power does not infringe on the Governor's explicit authority under § 42–29–1 to remove a sheriff for just cause.

Consequently the available procedures were spelled out by the Governor in his letters and in his executive order. The available procedures were derived from constitutional law. What seems to be troubling plaintiff in this case is that the Governor, rather than the Legislature, promulgated those procedures. Consequently the remaining issue is whether the executive order promulgated by Governor DiPrete is valid.

Recently this court, in *In re State Employees' Unions,* 587 A.2d 919 (R.I.1991), upheld Executive Order No. 91–11 against numerous challenges, including that it was beyond the scope of the executive power.

In that order the Governor ordered a shutdown of all state departments and agencies for ten business days to alleviate a severe cash-flow crisis in this state. The trial justice found that the Governor did have the authority to implement the order. He derives his power from both the general executive power conferred by the Rhode Island Constitution article 9, sections 1 and 2, and from two legislative delegations, G.L.1956 (1988 Reenactment) § 42–11–2(a) and (b), which authorizes the Governor to prepare and administer the State's budget, and G.L.1956 (1990 Reenactment) § 35–3–16, which authorizes the Governor to reduce or suspend appropriations for all executive departments to maintain a balanced budget.

■ This court approved the findings of the trial justice in *In re State Employees' Union.* We believe that the issue presented before us is analogous. The Governor has express authority to remove sheriffs for cause under § 42–29–1. It must be admitted that the Legislature did not spell out the procedures for removing such employees the way it did for classified employees in §§ 36–3–10(2) and 36–4–38. However, it is our belief that the Legislature cannot have bestowed upon the Governor the power to remove without also giving him the ability to wield that power. Executive Order No. 89–25 appears to be the Governor's attempt to comport with due-process requirements in the exercise of that power.

Perhaps the Governor could have promulgated personnel regulations rather than an executive order to achieve the same ends. It is not clear that the form in which the procedural requirements were stated would have made any difference to their validity. In any event DeCecco does not take issue with the form, that is, the executive order versus rules or regulations. Rather he disputes the Governor's authority to establish any requirements at all.

We would emphasize that this is not a case of a Governor infringing upon the power of another branch of government. *See Chang v. University of Rhode Island,* 118 R.I. 631, 375 A.2d 925 (1977) (executive order purporting to include nonprofit educational institutions under the Fair Employment Practices Act ineffective because only Legislature, through board or regents, had the power to determine who would be employed at the state institutions). In our opinion Executive Order No. 89–25 is valid.

Although the timing of the executive order may be the source of some concern and may be challenged as a last-minute attempt to validate DeCecco's dismissal, we believe that such a question is to be resolved by the United States District Court.

Again the timing may not have been faulty. We have no doubt that the Governor had the power to dismiss DeCecco for cause, and if he was required to afford him procedural due process, he would have met his constitutional burden by providing the sort of procedure set out in *Loudermill* and notifying DeCecco of his rights. That is, if this court determines that the Governor has the authority to issue the order, the District Court may decide whether it was wrongfully applied in this case. We hold that the Governor had the authority to issue the Executive Order.

In conclusion it is our belief that the first certified question is to be answered by reference to the executive order. Our reply to the second inquiry regarding whether the executive order is valid is to be answered in the affirmative.