# United States Court of Appeals
## For the First Circuit

No. 17-1635

ROBERT KANDO,

Plaintiff, Appellant,

v.

RHODE ISLAND STATE BOARD OF ELECTIONS ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. John J. McConnell, Jr., U.S. District Judge]

Before

Kayatta, Circuit Judge,
Souter, Associate Justice,[*]
and Selya, Circuit Judge.

Richard A. Sinapi for appellant.
Adam J. Sholes, Assistant Attorney General, with whom Kate
Brody, Special Assistant Attorney General, was on brief, for
appellees.

January 22, 2018

[*]Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**SELYA**, **Circuit Judge**. This case begins with a termination. Plaintiff-appellant Robert Kando, a quondam employee of the Rhode Island State Board of Elections (the Board), alleges in relevant part that his constitutional rights were violated by the manner in which his employment was brought to an abrupt end. Concluding that the plaintiff had not shown a deprivation of any constitutionally protected interest, the district court granted the Board's motion for judgment on the pleadings with respect to the plaintiff's claims under 42 U.S.C. § 1983. Although our reasoning differs somewhat from that of the district court, we affirm.

## I.  BACKGROUND

Since this case was decided on a motion for judgment on the pleadings, see Fed. R. Civ. P. 12(c), we assume the accuracy of the well-pleaded facts adumbrated in the complaint and "supplement those facts by reference to documents incorporated in the pleadings," Jardín De Las Catalinas Ltd. P'ship v. Joyner, 766 F.3d 127, 130 (1st Cir. 2014). The plaintiff served as the Board's executive director from 2005 until his dismissal in August of 2016. He asserts that his job performance during the first eight years of his tenure was efficient, effective, and devoid of controversy. As time progressed, personality conflicts with new Board members led to animosity, acrimony, and criticism of the plaintiff's job

performance.  In the plaintiff's view, this dissatisfaction often stemmed from matters over which the plaintiff had little control.

At some point prior to January 11, 2016, the Board tentatively decided to terminate the plaintiff's employment.  At its January 11 meeting, though, the Board changed course and voted to treat its previous termination decision as "null and void." The Board proceeded to suspend the plaintiff without pay for fifteen days and directed him to enroll in the next three semesters of management courses at an educational facility of his choosing. The Board stated that it would review the plaintiff's role as the Board's executive director and his working relationship with its members at the end of the third semester of coursework.  Apart from this statement, nothing in the minutes of the meeting indicates that the Board set a deadline for the plaintiff either to enroll in or to complete the required courses.

Eight days later, the Board sent the plaintiff a letter over the signature of its acting chair.  The January 19 letter purported to summarize what had transpired at the January 11 meeting and elaborated on the "management courses" requirement. The letter instructed the plaintiff to take two courses per semester (starting "this month"), to notify the Board of his chosen courses, and to keep the Board advised of his progress (by, for example, informing the Board of grades received).  Among other things, the letter also stated that, after the plaintiff had

completed the third semester of management courses, his employment status would be "subject to review by the Board."

The complaint alleges that, by the time of the Board's next meeting (March 16, 2016), the plaintiff had enrolled in management courses at Johnson & Wales University (JWU). The plaintiff concedes, however, that he did not enroll in these courses prior to the end-of-January deadline limned in the January 19 letter (which he characterizes as arbitrary and unreasonable). Noting that he had failed to enroll by the deadline, the Board suspended him for six weeks without pay.

On August 31, 2016, the Board held a special meeting. Without allowing the plaintiff to speak, the Board voted to terminate his employment. At that time, the plaintiff was still enrolled at JWU and had not yet completed the required three semesters of management courses.

The plaintiff repaired to the federal district court and brought suit against the Board and its members. His complaint contained an array of claims under both federal and state law, including (as relevant here) claims for alleged deprivation of due process under 42 U.S.C. § 1983. After answering the complaint, the defendants moved for judgment on the pleadings. See Fed. R. Civ. P. 12(c). With respect to the section 1983 claims, the defendants argued that because the plaintiff was an at-will employee, the Board had every right to cashier him at the August

- 4 -

31 meeting. The district court agreed, finding that the plaintiff had failed to establish a cognizable property interest in his continued employment and that the absence of such a property interest foreclosed all of his section 1983 claims. See Kando v. R.I. Bd. of Elections, 254 F. Supp. 3d 335, 340 & n.4 (D.R.I. 2017). Having granted judgment for the defendants on the plaintiff's federal claims, the court declined to exercise supplemental jurisdiction over the plaintiff's state-law claims and dismissed those claims without prejudice. See id at 341; see also 28 U.S.C. § 1367(c). After unsuccessfully moving for reconsideration, the plaintiff now appeals from the entry of judgment on his federal claims.[1]

## II. ANALYSIS

We review the entry of judgment on the pleadings de novo. See Pérez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008). In conducting this appraisal, we are not bound by the district court's reasoning but, rather, may affirm the entry of judgment on any ground made manifest by the record. See InterGen N.V. v. Grina, 344 F.3d 134, 141 (1st Cir. 2003).

A motion for judgment on the pleadings bears a strong family

---

[1] We take no view of the plaintiff's state-law claims. The district court dismissed those claims without prejudice, see Kando, 254 F. Supp. 3d at 341, and the plaintiff has not argued that we should reverse that dismissal if we do not revive the federal claims.

resemblance to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), and these two types of motions are treated in much the same way. See Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54 (1st Cir. 2006). Consequently, we take the well-pleaded facts and the reasonable inferences therefrom in the light most favorable to the nonmovant (here, the plaintiff). See R.G. Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 182 (1st Cir. 2006). In addition, our review may include facts drawn from documents "fairly incorporated" in the pleadings and "facts susceptible to judicial notice." Id. Withal, any new facts contained in the answer, to which no responsive pleading by the plaintiff is required, are deemed denied. See id.

When all is said and done, this standard requires us to "separate wheat from chaff; that is, [to] separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012). Judgment on the pleadings should be allowed only if the properly considered facts conclusively establish that the movant is entitled to the relief sought. See R.G. Fin. Corp., 446 F.3d at 182.

The statutory anchor for the plaintiff's federal claims is 42 U.S.C. § 1983, which provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of

any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  Refined to bare essence, section 1983 affords a private right of action in favor of persons whose federally assured rights are abridged by state actors.  See Evans v. Avery, 100 F.3d 1033, 1036 (1st Cir. 1996).  Here, the plaintiff's principal section 1983 claim alleges that the defendants violated the Due Process Clause, see U.S. Const. amend. XIV, § 1, by depriving him of his employment without due process of law.  His second section 1983 claim alleges that the defendants violated the Due Process Clause by stigmatizing him without providing an opportunity for a name-clearing hearing.  We examine these claims sequentially.

### A.  The Loss-of-Employment Claim.

We start with the plaintiff's claim that he was deprived of his employment without due process of law.  In order to mount a successful due process claim stemming from the loss of public employment, an employee must demonstrate that he has a cognizable property interest in his continued employment.  See Bd. of Regents v. Roth, 408 U.S. 564, 570-71 (1972); Perry v. Sinderman, 408 U.S. 593, 599 (1972).  That interest must be rooted in state law.  See Roth, 408 U.S. at 577.

The Supreme Court has made pellucid that cognizable property interests may come in various shapes and sizes.  See id. at 576; Goldberg v. Kelly, 397 U.S. 254, 262 n.8 (1970).  It is, however, a sine qua non that an action for deprivation of property without due process must include a showing that state law protects the identified property right.  See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985); Roth, 408 U.S. at 577. Therefore, an inquiring court must determine whether a particular plaintiff has a constitutionally protected property interest "by reference to state law."  Bishop v. Wood, 426 U.S. 341, 344 (1976). Even so, whether a given property interest rises to a level sufficient to trigger due process protections remains a federal question.  See Acevedo-Feliciano v. Ruiz-Hernández, 447 F.3d 115, 121 (1st Cir. 2006).

Viewed against this backdrop, it is readily apparent that, to prevail on his deprivation-of-property claim, the plaintiff must show that he "had a legitimate claim of entitlement to continued employment arising out of Rhode Island law." Ventetuolo v. Burke, 596 F.2d 476, 480 (1st Cir. 1979).  Such a claim may be established by reference to a state "statute, policy, rule, or contract."  Wojcik v. Mass. State Lottery Comm'n, 300 F.3d 92, 101 (1st Cir. 2002).

Here, the plaintiff faces a steep uphill climb.  Rhode Island law denominates most positions in the state service as

either "classified" or "unclassified," and all "[e]lection officials and employees" are categorized as unclassified employees. R.I. Gen. Laws § 36-4-2(a)(12). Making the matter doubly clear, a separate statute, R.I. Gen. Laws § 17-7-6, explicitly places the plaintiff's position in the unclassified service.[2] The Rhode Island Supreme Court repeatedly has held that unclassified employees serve at the pleasure of the appointing authority and ordinarily can be dismissed for any reason other than a discriminatory one. See Blanchette v. Stone, 591 A.2d 785, 787-88 (R.I. 1991); Salisbury v. Stone, 518 A.2d 1355, 1359 (R.I. 1986); Lynch v. Gontarz, 386 A.2d 184, 187 (R.I. 1978). As a result, an unclassified state employee is generally deemed an at-will employee and, as such, lacks a reasonable expectation of continued employment. See Blanchette, 591 A.2d at 787-88; Salisbury, 518 A.2d at 1360.

The plaintiff argues that, notwithstanding his unclassified status, he had a protected property interest in his continued employment. To begin, he asserts that the Board's actions at its January 11 meeting created a contract that guaranteed him continued employment while he was pursing the required management courses. This assertion runs headlong into

---

[2] It is undisputed that the official title of the plaintiff's executive director position is "secretary" of the Board, and section 17-7-6 refers specifically to this job title.

the pronouncements of the Rhode Island Supreme Court, which has held that "alleged . . . promises [of continued employment], even if presumed to have been made, cannot, as a matter of law, expand the limits imposed by the Legislature upon the termination rights of unclassified state employees."  Salisbury, 518 A.3d at 1358; accord Donnelly v. Almond, 695 A.2d 1007, 1009 (R.I. 1997); Gibbons v. State, 694 A.2d 664, 665 (R.I. 1997); see also Hawkins v. R.I. Lottery Comm'n, 238 F.3d 112, 114 (1st Cir. 2001).  Since any promises made by the Board could not have overridden the statutory designation of the plaintiff's position, his suggestion that the Board somehow modified his at-will status is doomed to failure: even if the Board had meant to offer the plaintiff a contractual guarantee of continued employment, it lacked the authority (actual or apparent) to do so.[3]  See Ventetuolo, 596 F.2d at 481; Salisbury, 518 A.2d at 1358.

In an effort to blunt the force of this reasoning, the plaintiff serves up a salmagundi of counter-arguments.  First, he invokes a statutory provision directed to the Rhode Island Council on Elementary and Secondary Education (the Council), which allows

---

[3] In all events, the minutes of the January 11 meeting (incorporated by reference in the complaint) are conspicuously silent on the issue of whether the Board intended to alter the plaintiff's at-will employment status for the duration of his college coursework.  The minutes merely state that after he has completed his three semesters, the Board will conduct a review of the plaintiff's employment and working relationship with the Board.

the Council to enter into an employment contract of up to three years with an employee in the unclassified service. See R.I. Gen. Laws § 16-60-6. His argument, in effect, is that the Board possesses comparable authority.

We have seen this movie before: in Hawkins, 283 F.3d at 114, we rejected an attempt to extend similar statutory provisions to the Rhode Island Lottery Commission. The same result obtains here: section 16-60-6 is employee-specific and is limited to a single position (namely, the Commissioner of Elementary and Secondary Education). It has no application to other state employees, let alone to employees of the Board. Nor has the plaintiff identified any analogous statute authorizing term contracts for any Board employees.

So, too, the plaintiff's attempt to draw sustenance from a line of Rhode Island Supreme Court decisions that includes Castelli v. Carcieri, 961 A.2d 277 (R.I. 2008), and DeCecco v State, 593 A.2d 1342 (R.I. 1991), is unavailing. Those cases involve the employment rights of deputy sheriffs, and deputy sheriffs are sui generis under Rhode Island law: though within the unclassified service, deputy sheriffs have been granted special statutory protections by the Rhode Island General Assembly. See R.I. Gen. Laws § 42-29-1; see also Castelli, 961 A.2d at 280-81 (discussing appointment of deputy sheriffs); DeCecco, 593 A.2d at 1343-44 (noting that deputy sheriffs are statutorily entitled to

a "greater panoply of rights than are most unclassified employees who serve at will").  The General Assembly has not enacted any comparable protections for the employment rights of Board employees.

Next, the plaintiff suggests that another statute indicates that only employment contracts of more than three years in duration are forbidden for employees in the unclassified service.  See R.I. Gen. Laws § 36-16-1.  In the plaintiff's view, the Board had plenary authority to enter into an employment contract of any shorter length.  The statute, though, cannot bear the weight that the plaintiff loads upon it.

Section 36-16-1 prohibits state agencies from entering into "a contract term in excess of three (3) years" with anyone "upon termination of employment."  This provision, properly read, precludes state agencies (including the Board) from entering into contracts of more than three years in duration with former employees.  We have said before that "irony is no stranger to the law," Amanullah v. Nelson 811 F.2d 1, 18 (1st Cir. 1987), and that is true here: although this statute might now apply to the plaintiff should he seek future employment with the Board, it has no application to the plaintiff's employment rights before he was cashiered.  Consequently, section 36-16-1 offers the plaintiff no hope of sanctuary on the facts of this case.

Finally, the plaintiff adverts to dictum that suggests some possible play in the joints with respect to unclassified employees. See Lynch, 386 A.2d at 188 (assuming — in case brought by unclassified employee — that "a property interest in employment can, of course, be created . . . by an implied contract," but declining to reach implied contract issue because it had not been raised below); see also Ventetuolo v. Burke, 470 F. Supp. 887, 892 (D.R.I. 1978) (assuming, without deciding, that the presumption of at-will employment status for unclassified employees "can be rebutted by evidence that a fixed term was intended"). The Lynch court's dictum reflects an understandable caution not to prejudge scenarios not squarely presented in a given case. But even though such caution is commendable, "a dictum is not a holding." Microsys. Software, Inc. v. Scandinavia Online AB, 226 F.3d 35, 40 (1st Cir. 2000). More to the point, dictum concerning the operation of state law cannot trump explicit holdings of a state's highest court, which have not been overruled, abrogated, or narrowed in any pertinent respect. See id.; see also Arcam Pharm. Corp. v. Faria, 513 F.3d 1, 3 (1st Cir. 2007). The decision in Lynch predated the decision in Salisbury, 518 A.2d at 1355, and the dictum relied upon by the plaintiff is flatly contradicted by the well-reasoned holding in Salisbury. We conclude, therefore,

that the Lynch dictum cannot rescue the plaintiff's loss-of-employment claim.[4]

The short of it is that the plaintiff, as an unclassified employee simpliciter, served at the pleasure of the Board and had no reasonable expectation of continued public employment. Thus, he has failed to allege facts sufficient to show a constitutionally protected property interest in his job. See Roth, 408 U.S. at 578. On this record, then, the district court's disposition of the plaintiff's loss-of-employment claim must be upheld.[5]

## B. The Stigmatization Claim.

The plaintiff has a second federal claim. He submits that the Board stigmatized him through public shaming, discipline, and the eventual termination of his employment, without giving him an opportunity for a name-clearing hearing. This conduct, he says,

_____

[4] If what the plaintiff really is seeking is for this court to blaze a new trail in Rhode Island jurisprudence, he has come to the wrong place. State courts possess concurrent jurisdiction over section 1983 claims, see Felder v. Casey, 487 U.S. 131, 139 (1988), and had the plaintiff desired to effectuate a change in existing Rhode Island law, a state-court forum would have been better-suited to the task. Federal courts have a long history of reluctance to expand the frontiers of state law. See, e.g., Kassel v. Gannett Co., 875 F.2d 935, 950 (1st Cir. 1989) (explaining that when a plaintiff chooses "to reject a state-court forum in favor of a federal forum, he is in a perilously poor position to grumble when we follow existing state precedent").

[5] As part of his asseverational array, the plaintiff contends that the district court decided this case on a ground that was neither briefed nor argued by the parties. This contention depends on what the plaintiff perceives to be the district court's reliance on the Board's January 19 letter. Because our reasoning does not rest in any way on that letter, we need not pursue the point.

transgressed his rights under the Due Process Clause and, thus, supports a cause of action under section 1983. The district court concluded that the lack of a constitutionally protected property interest frustrated this claim. See Kando, 254 F. Supp. 3d at 340 n.4.

We do not agree with the district court's rationale. Even where, as here, a public employee has no constitutionally protected property interest in continued government employment, there are circumstances in which his dismissal may so damage his reputation that his liberty interest, separately protected under the Due Process Clause, is infringed. See Paul v. Davis, 424 U.S. 693, 708-09 (1976); Burton v. Town of Littleton, 426 F.3d 9, 14 (1st Cir. 2005). In such instances, the Constitution requires that the employer afford the ex-employee an opportunity to dispute the stigmatizing allegations and clear his name. See Codd v. Velger, 429 U.S. 624, 627-28 (1977) (per curiam); Wojcik, 300 F.3d at 103.

Despite its imperfect rationale, the district court's conclusion that the plaintiff's complaint did not make out a viable stigmatization claim is unimpugnable. A name-clearing hearing is not available on demand: "defamation, even from the lips of a government actor, does not in and of itself transgress constitutionally assured rights." Pendleton v. Haverhill, 156

- 15 -

F.3d 57, 62-63 (1st Cir. 1998); see Bishop, 426 U.S. at 349 & n.13;
Silva v. Worden, 130 F.3d 26, 32 (1st Cir. 1997).

A plaintiff who pursues a stigmatization claim against
a public employer must satisfy a five-part test.  The challenged
statements must be false, they must have seriously damaged the
employee's reputation and standing in the community, they must
have been intentionally publicized by the government employer,
they must have been made in conjunction with the employee's
termination, and the government must have denied the employee's
post-termination request for a name-clearing hearing.  See Bishop,
426 U.S. at 348-49; Buntin v. City of Boston, 813 F.3d 401, 406
(1st Cir. 2015); Wojcik, 300 F.3d at 103.

As this case comes to us on a motion for judgment on the
pleadings, we turn to the complaint's factual allegations to
determine if these five criteria have been met.  See García-Catalán
v. United States, 734 F.3d at 100, 103 (1st Cir. 2013).  Two
paragraphs of the complaint provide the basis for the plaintiff's
deprivation-of-liberty claim.[6]  We reprint them in their entirety:

> 46. At all relevant times, the Board and
> Defendant Members thereof routinely and
> regularly portrayed Plaintiff's role and
> actions in various controversies inaccurately
> and falsely.

_____

[6] While a third paragraph (paragraph 50) also relates to this
claim, that paragraph is limited to a statement of the damages
that the plaintiff allegedly sustained in consequence of the
stigmatization.  No useful purpose would be served by reprinting
those allegations here.

- 16 -

47. Further, after defaming and tarnishing him and his reputation, the Board denied Plaintiff a full and fair opportunity to respond and clear his name and reputation.

The complaint does not disclose what statements were actually made. Nor does it say when the challenged statements were voiced.

Taken in the light most favorable to the plaintiff, see R.G. Fin. Corp., 446 F.3d at 182, these flimsy averments make out a bareboned allegation that false statements were made. But these averments tell us no more than that the defendants portrayed the plaintiff's role in various controversies in an inaccurate light. Short of sheer guesswork, there is no way for us to glean whether the statements at issue were sufficiently stigmatizing to impact the plaintiff's liberty interest. There must be more meat on the bones — and it was the plaintiff's obligation to put it there. See Bishop, 426 U.S. at 350; Roth, 408 U.S. at 573. After all, even statements that suggest that an employee was incompetent, not good at his job, or inattentive to duty do not rise to the level of seriousness sufficient to trigger constitutional interests. See Wojcik, 300 F.3d at 103.

At any rate, the plaintiff's claim founders because he never alleged that the challenged statements were intentionally publicized or disseminated by the Board. This omission is fatal: to give rise to a stigmatization claim, the employer must have taken deliberate steps to publicize or disseminate the false

- 17 -

statements.  See Silva, 130 F.3d at 32-33.  Water-cooler gossip, widespread rumors, and random leaks will not suffice to prove the required element.  See id.  As we have said, "it takes a more formal statement to constitute publication."  Burton, 426 F.3d at 15; see Beitzell v. Jeffrey, 643 F.3d 870, 879 (1st Cir. 1981) (finding a "world of difference" between rumors and official charges made publicly).

If more were needed — and we do not think that it is — the plaintiff's stigmatization claim also fails because his complaint never alleges that the challenged statements were made in conjunction with his termination.  Although he alleges that the Board "routinely and regularly" portrayed him in a false and inaccurate manner, that is not the same as alleging that those depictions were either directly connected to his dismissal or uttered in the course of that dismissal.  See Wojcik, 300 F.3d at 103; see also Roth, 408 U.S. at 573.  Such a link between the allegedly defamatory statements and the termination of the plaintiff's employment is a necessary element of a stigmatization claim.  See Buntin, 813 F.3d at 407; see also Roth, 408 U.S. at 573.

At the expense of carting coal to Newcastle, we note that a request for a name-clearing hearing is likewise an essential element of a stigmatization claim.  See Buntin, 813 F.3d at 407. In this instance, the plaintiff does not allege that he ever asked

for a name-clearing hearing.  Although the complaint asserts that he was denied a "full and fair opportunity to respond and clear his name and reputation," it does not indicate that he requested such a hearing.[7]

The plaintiff suggests that we should read between the lines and assume that he can prove the various elements needed for a successful stigmatization claim.  But to survive a motion for judgment on the pleadings — just as to survive a motion to dismiss — the allegations of the complaint must be plausible on their face. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Those factual allegations contained in the complaint cannot be "meager, vague, or conclusory," leaving the plaintiff's claim largely within the realm of conjecture.  SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).  Here, the plaintiff has failed to carry this burden: he has not alleged sufficient facts to make his claim plausible (as opposed to theoretical or speculative). Accordingly, the district court did not err in granting the defendants' motion for judgment on the pleadings.

---

[7] To be sure, the complaint does allege that the plaintiff unsuccessfully requested an opportunity to speak before he was terminated.  The complaint does not suggest, though, that he asked for a name-clearing hearing at any time after he was terminated.

## III. CONCLUSION

We need go no further.  For the reasons elucidated above, the judgment of the district court is


**Affirmed**.