# United States Court of Appeals
## For the First Circuit

No. 23-1021

YVONNE MARTIN, as personal representative of the Estate of Paul
McDonald,

Plaintiff, Appellant,

v.

SOMERSET COUNTY ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Nancy Torresen, U.S. District Judge]

Before

Kayatta, Selya, and Gelpí,
Circuit Judges.

Kristine C. Hanly, with whom Garmey Law was on brief, for
appellant.
Peter T. Marchesi, with whom Michael D. Lichtenstein and
Wheeler & Arey, P.A., were on brief, for appellees Somerset County
and related parties.
John J. Wall, III, with whom Monaghan Leahy, LLP was on brief,
for appellees Craig Meunier and Gerard Madore.
Benjamin J. Wahrer, with whom Thompson Bowie & Hatch LLC was
on brief, for appellees MedPro Associates and Cheryll Needham.

November 21, 2023

**SELYA**, **Circuit Judge**.  On the six-year anniversary of her son's death, plaintiff-appellant Yvonne Martin invoked 42 U.S.C. § 1983 and sued on behalf of his estate.  She alleged a deprivation of her late son's rights at the hands of jail staff and a medical contractor.  Specifically, she claimed that while her son was detained in the Somerset County Jail, the defendants failed to recognize his serious mental illness, leading to his death after a suicide attempt.  The district court — in two separate orders — ruled that the suit was time-barred as to all defendants.  After careful consideration, we affirm.

## I

We briefly rehearse the relevant facts and travel of the case.  Two dispositive orders are involved:  one granting a motion to dismiss and the other granting a pair of motions for judgment on the pleadings.  In reviewing both the grant of a motion to dismiss and the grant of a motion for judgment on the pleadings, we take as true the well-pleaded facts.  See Álamo-Hornedo v. Puig, 745 F.3d 578, 579 (1st Cir. 2014); A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 79 (1st Cir. 2013).

## A

Paul McDonald, whom we sometimes shall call "the decedent," was arrested in Somerset County, Maine on July 2, 2015.  The arrest was for possession of drug paraphernalia in violation of the conditions of his probation.  After arresting officers found

- 3 -

McDonald in an unresponsive state, they transported him to a local hospital, where he was cleared medically and discharged later that day. He was then taken to the Somerset County Jail.

During the booking procedure, jail staff identified McDonald as a high suicide risk individual with over a dozen recorded suicide attempts. McDonald rated his own suicide risk as a ten out of ten. Jail staff ordered a suicide-risk assessment, which was conducted by Cheryll Needham of MedPro Associates (MedPro), a contract health-professional firm, on July 6, 2015.[1] Based on the results of that assessment, McDonald was placed in a smock and given special oversight while incarcerated.

The next day, Needham reexamined McDonald and made another suicide-risk assessment. This time, Needham recommended that McDonald wear regular clothing. A day later — on July 8 — Needham cleared McDonald for release into the jail's general population and recommended no further follow-up risk assessments.

Less than twenty-four hours later — on July 9 — McDonald attempted suicide by hanging himself in his cell. For some unknown reason, a corrections officer had failed to conduct a security check of the area in which McDonald was housed. This failure left

---

[1] For the most part, record references to Needham spell her first name as "Cheryll." Even so, there are indications in the record, including a facsimile of her signature that the correct spelling of her name uses a single "l." In the interest of uniformity, we use the spelling that predominates in the record.

McDonald unsupervised in his cell for roughly ten minutes, during which time he tied one end of a sheet to a window beam and the other end to his neck. When jail staff approached McDonald's cell for a medical check-in, they found him unconscious. The jail staff performed chest compressions and rescue breaths, but to no avail.

Emergency medical personnel then returned McDonald to the hospital. McDonald remained in a coma and never regained consciousness. Medical scans confirmed that he had suffered severe brain damage due to oxygen deprivation. On July 16 — ten days after receiving his initial suicide-risk assessment and seven days after his suicide attempt — McDonald died.

The plaintiff alleged that County officials conducted an internal investigation into the circumstances of McDonald's death, but the pleadings offer no further insight into either the scope or the outcome of the investigation.

## B

Six years later to the day — on July 16, 2021 — the plaintiff, in her capacity as personal representative of McDonald's estate, filed suit in the United States District Court for the District of Maine. The complaint, which was premised upon 42 U.S.C. § 1983, alleged infringement of McDonald's Eighth and Fourteenth Amendment rights.

MedPro and Needham were among the named defendants, and they moved to dismiss the suit against them. See Fed. R. Civ. P.

12(b)(6). They argued that the plaintiff's cause of action was time barred and that, alternatively, the plaintiff failed to state plausible claims against them. The district court granted the motion to dismiss, concluding that the cause of action against MedPro and Needham was time barred.

The plaintiff's suit also named as defendants Somerset County, the County's sheriff, and a number of members of the jail staff. Following the grant of MedPro's and Needham's motion to dismiss, those defendants — who already had answered the complaint — moved for judgment on the pleadings. See Fed. R. Civ. P. 12(c). Because two of the County defendants were independently represented, two separate motions were filed. Both motions asserted that the plaintiff's suit was untimely. The district court agreed and granted their motions.[2]

This timely appeal ensued.

## II

We review the grant of a motion to dismiss for failure to state a claim de novo. See SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010) (en banc); Garita Hotel Ltd. P'ship v. Ponce Fed.

---

[2] Although the plaintiff filed an opposition to the motion to dismiss, she did not file oppositions to the motions for judgment on the pleadings. The district court nonetheless treated the motions for judgment on the pleadings as opposed. Treating the motions as opposed was within the district court's discretion. See Delgado v. Pawtucket Police Dep't, 668 F.3d 42, 50 (1st Cir. 2012) (explaining that "[d]istrict courts enjoy broad discretion in managing their dockets").

Bank, F.S.B., 958 F.2d 15, 17 (1st Cir. 1992). We take the well-pleaded facts contained in the complaint as true and draw all reasonable inferences in favor of the plaintiff's cause. See Tambone, 597 F.3d at 441.

Reviewing a motion for judgment on the pleadings "bears a strong family resemblance to [reviewing] a motion to dismiss." Id. Once again, our review is de novo. Shay v. Walters, 702 F.3d 76, 79 (1st Cir. 2012). We take as true all well-pleaded facts in the plaintiff's complaint, and we draw all reasonable inferences to the plaintiff's behoof. Kando v. R.I. State Bd. of Elections, 880 F.3d 53, 58 (1st Cir. 2018). In addition to the well-pleaded facts, we may also consider facts drawn from any documents that were "fairly incorporated" in the complaint. Id. (quoting R.G. Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 182 (1st Cir. 2006)). In the end, a judgment on the pleadings should be upheld as long as the "facts conclusively establish that the movant is entitled to the relief sought." Id. Entering a judgment on a motion to dismiss or on a motion for judgment on the pleadings "based on a limitations defense is entirely appropriate when the pleader's allegations leave no doubt that an asserted claim is time-barred." LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998).

## III

In the court below, the plaintiff offered two theories as to why her suit was timely. First, she argued that the cause of action could not have accrued until she had standing, that is, until the date of the decedent's death. Second, she argued that the running of the statute of limitations should be equitably tolled. She rested this latter argument — without much elaboration — mainly upon the "unique" facts of the case together with an assertion that the causal connection between the defendants' wrongful acts and the decedent's injury was not readily ascertainable until the decedent's records were furnished to the plaintiff.

The district court found neither ground sufficient to warrant a finding of timeliness. Instead, the court concluded that the suit was time-barred. The court proceeded to dismiss the case as to some defendants and later entered judgment on the pleadings in favor of all the remaining defendants.

## IV

The plaintiff challenges the district court's rulings — both on the motion to dismiss and on the motions for judgment on the pleadings — that her claims were time-barred. We first examine the anatomy of her challenge and then resolve it.

**A**

Federal law creates a cause of action under 42 U.S.C. § 1983, which allows a plaintiff to sue persons acting under color of state law for constitutional transgressions or other violations of federal law. See Evans v. Avery, 100 F.3d 1033, 1036 (1st Cir. 1996). Even so, the limitations period for such an action is borrowed from state law. See Wallace v. Kato, 549 U.S. 384, 387 (2007).

Here, the parties agree that the appropriate limitations period for the plaintiff's section 1983 action is that specified in Me. Stat. tit. 14, § 752, which prescribes that "[a]ll civil actions shall be commenced within 6 years after the cause of action accrues." Thus, if the plaintiff's cause of action accrued on the date of the decedent's death (as she urges), her suit is not time-barred: the plaintiff filed suit on July 16, 2021, which comes, though barely, within six years of McDonald's death on July 16, 2015. But if the cause of action accrued on an earlier date when the decedent first became aware or should have become aware of the injury (as the defendants urge), the plaintiff's suit is time-barred. And that is true regardless of whether the "earlier date" is deemed to be July 8, 2015 (the date when Needham made the negative suicide-risk assessment) or July 9, 2015 (the date when McDonald hanged himself in his cell). We turn, then, to a determination of the date of accrual.

We start with the plaintiff's assertion that her section 1983 claim accrued when the decedent died. In support, the plaintiff notes that under Maine's wrongful death statute, she had standing to sue on McDonald's behalf only after he died and she became the personal representative of his estate. Her cause of action, she says, could not have accrued before she had standing to bring it.

The plaintiff's view of the accrual date flies in the teeth of existing precedent. "[T]he accrual date of a [section] 1983 cause of action is a question of federal law that is <u>not</u> resolved by reference to state law." <u>Wallace</u>, 549 U.S. at 388 (emphasis in original). Any aspect of a section 1983 claim that is not governed by reference to a specific state law instead is governed by federal common law principles. See <u>id.</u> "Under those principles, . . . 'the standard rule [is] that [accrual occurs] when the [injured party] has a complete and present cause of action.'" <u>Id.</u> (second alteration in original) (quoting <u>Bay Area Laundry & Dry Cleaning Pension Tr. Fund</u> v. <u>Ferbar Corp. of Cal.</u>, 522 U.S. 192, 201 (1997)). A cause of action becomes complete and present on the date of knowledge of the injury. See <u>Nieves</u> v. <u>McSweeney</u>, 241 F.3d 46, 52 (1st Cir. 2001). ("[A] section 1983 claim accrues at the moment the plaintiff knows, or has reason to know, of the injury that is the basis for the claim.").

To be sure, the parties disagree as to the date on which the decedent had knowledge of the injury. On the one hand, the plaintiff contends that this date should be when the effects of the decedent's injury were fully felt, that is, the date that he died. On the other hand, the defendants contend that this date should be the date when the act that caused the injury occurred (that is, either the date on which the decedent received an overly optimistic suicide-risk assessment or the date on which McDonald's suicide attempt occurred).

Precedent teaches that, in section 1983 cases, "[the] plaintiff is deemed to know or have reason to know [of the injury] at the time of the act itself and not at the point that the harmful consequences are felt." Morán Vega v. Cruz Burgos, 537 F.3d 14, 20 (1st Cir. 2008) (quoting Guzman-Rivera v. Rivera-Cruz, 29 F.3d 3, 5 (1st Cir. 1994)). This means, of course, that the plaintiff's position in this case is untenable. At the latest, knowledge of the injury took place at the time of the decedent's suicide attempt,[3] not at the later time that the harmful consequences came

---

[3] It is arguable whether the date of knowledge and, thus, the accrual date was the date that the negative suicide-risk assessment was made or the date of the suicide attempt. Cf. Brockman v. Tex. Dep't of Crim. Just., 397 F. App'x 18, 22 (5th Cir. 2010) (evaluating these alternatives and concluding that decedent "should have known the quality of the [mental health] treatment he was receiving [before his suicide]"). Here, however, that debate is academic: whichever of these dates obtains, the plaintiff's suit is time-barred.

to full fruition, that is, the time of the decedent's demise.  Even assuming that the decedent was not — nor should have been — aware of his injuries until that time, the plaintiff's filing date of July 16, 2021, was beyond the six-year limitations period.

**B**

**1**

In the district court, the plaintiff made a cursory argument that the limitations period should be equitably tolled. She mentioned equitable tolling — a doctrine that empowers a court, in appropriate circumstances, to extend the limitations period for a particular action — and suggested that it should apply based on the "unique fact pattern" of the case.

Although equitable tolling may be available in "exceptional circumstances," Vistamar, Inc. v. Fagundo-Fagundo, 430 F.3d 66, 71 (1st Cir. 2005) (quoting Neverson v. Farquharson, 366 F.3d 32, 40 (1st Cir. 2004)), it is "the exception rather than the rule," Delaney v. Matesanz, 264 F.3d 7, 14 (1st Cir. 2001). To gain the assistance of the doctrine, a plaintiff must show "that [s]he has been pursuing [her] rights diligently, and [] that some extraordinary circumstance stood in [her] way and prevented [her] timely filing."  Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DeGuglielmo, 544 U.S. 408, 418 (2005)).  And equitable tolling may also be available if a plaintiff can show that a defendant has prevented or discouraged her from uncovering

the facts required to bring a cause of action.  See Vistamar, 430
F.3d at 72.

**2**

We have "left open the question of whether the equitable
tolling of § 1983 actions is governed by state or federal law."
Id. at 71-72.  This case does not require us to visit that
unanswered question.  Under either regime, the plaintiff's
argument founders.

Federal law "pauses the running of . . . a statute of
limitations when a litigant has pursued [her] rights diligently
but some extraordinary circumstance prevents [her] from bringing
a timely action."  Arellano v. McDonough, 598 U.S. 1, 6 (2023)
(quoting Lozano v. Montoya Alvarez, 571 U.S. 1, 10 (2014)).  When
a plaintiff is mentally incapacitated, there is no "absolute rule
of tolling," and instead "[r]elief from limitations
periods . . . remains subject to careful case-by-case scrutiny."
Nunnally v. MacCausland, 996 F.2d 1, 4 (1st Cir. 1993) (emphasis
in original); see Gyamfi v. Whitaker, 913 F.3d 168, 174 (1st Cir.
2019) ("[T]he decision to apply equitable tolling is a judgment
call.").

Maine law points in the same direction.  Under it, "the
statute of limitations is tolled when strict application of the
statute of limitations would be inequitable," Dasha v. Me. Med.

Ctr., 665 A.2d 993, 995 n.2 (Me. 1995), an essentially case-sensitive inquiry.

**3**

Below, the plaintiff made only glancing references to equitable tolling. To flesh out her "unique fact pattern" theory, she first mused that she experienced a period of delay in obtaining the decedent's medical records because they were unavailable until the decedent's death. In this regard, she suggested that the records were under the control of one or more of the defendants prior to the internal investigation (which started and ended at times she did not specify). Next — in a single sentence in her opposition to the motion to dismiss — the plaintiff wrote: "[T]he combination of the injury immediately resulting in a period of unconsciousness preceding death, with the necessity of the records under control of the actor to show the causal connection warrant such an application of the tolling doctrine."

The district court rejected these arguments, and we discern no error. As we have said, "[t]he 'heavy burden' of establishing entitlement to equitable tolling rests on the plaintiff," Vázquez-Rivera v. Figueroa, 759 F.3d 44, 50 (1st Cir. 2014) (quoting Farris v. Shinseki, 660 F.3d 557, 563 (1st Cir. 2011)), and the plaintiff did not hoist that burden here.

To begin, the plaintiff did not cite any statute or case that might enable equitable tolling based on the defendants'

actions with respect to the decedent's medical records. Moreover, she did not describe any conduct on the part of the defendants that either hampered her efforts to obtain the decedent's records or hindered her recourse to suit. Nor did she explain how the alleged unavailability of the records impacted her ability to enforce her rights. A plaintiff who seeks to invoke equitable tolling must effectively argue for its application, not merely mention its name and refer cryptically to scattered facts that populate the record. In other words, the plaintiff must not only have identified the legal theory on which she stakes her claim but also must have given that theory sufficient shape to alert the court to its proposed application. See Iverson v. City of Bos., 452 F.3d 94, 102 (1st Cir. 2006).

To cinch the matter, the plaintiff provided nothing to indicate that she had been diligently pursuing her rights. Her argument rested almost exclusively on the unelaborated assertion that a "unique fact pattern" furnished a sufficient basis for the application of equitable tolling. On this barebones record, we cannot say that the district court erred in refusing to attach decretory significance to the status of the medical records and declining — on that basis — to salvage the plaintiff's time-barred suit through the medium of equitable tolling. See Clauson v. Smith, 823 F.2d 660, 663 (1st Cir. 1987); cf. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (holding, in waiver-of-

- 15 -

argument context, that "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones").

## C

On appeal, the plaintiff advances a more refined equitable tolling argument. With a stronger gust filling her sails, she insists that the fact that the decedent was in a coma should itself give rise to equitable tolling. If one becomes incapacitated as a result of a defendant's alleged negligence, her thesis runs, it would be inequitable to expect the incapacitated person to know of the harm. Thus — she argues — equity demands the exclusion from the limitations period of the interval of incapacitation (here, the time during which the decedent was comatose).

Assuming, without deciding, that this argument was preserved for appeal,[4] it is nonetheless futile: the decedent's

_____

[4] Although we do not resolve the issue, we note that the equitable tolling argument made by the plaintiff on appeal bears only a modest resemblance to the equitable tolling argument that she made below. An argument not advanced in the district cannot be broached for the first time in the court of appeals. See Teamsters Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992) ("[A]bsent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal."). An appellant must have done more than use the same labels in both the district court and the court of appeals in order to avoid waiver. See McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 22 (1st Cir. 1991).

- 16 -

five-day period of unconsciousness is not enough to bring equitable tolling into play. Even if we were to set aside the five days that the decedent spent in a coma, the plaintiff still had more than five years and eleven months within which to bring a timely suit. Nowhere does she explain why, had she exercised ordinary diligence, she would not have been able to conform to this deadline. She does not allege that she was "prevented from complying with [the statutory deadline] through no fault . . . of [her] own." Gyamfi, 913 F.3d at 174. Nor does she allege any facts suggesting that she was assured that she had as much time as she now claims was available to her.

That ends this aspect of the matter. "[T]he equitable tolling doctrine is not available as a means of rescuing a party who has failed to exercise due diligence." Pineda v. Whitaker, 908 F.3d 836, 842 (1st Cir. 2018). And so — even if we assume that the plaintiff has preserved this equitable tolling argument on appeal — she has not shown that application of the statute of limitations to her claim would result in an unjust outcome.

The result might be different if a mental incapacitation had occurred near the end of the limitations period and a plaintiff could show that she had otherwise been prepared to file her

---

"[I]f a claim is 'merely insinuated' rather than 'actually articulated,' that claim is ordinarily deemed unpreserved for the purposes of appellate review." Iverson, 452 F.3d at 102 (quoting McCoy, 950 F.2d at 22).

- 17 -

complaint on time. In such circumstances, it might well be inequitable to hold a plaintiff to the strict statutory deadline, where — but for the extraordinary circumstance of the plaintiff's incapacity — she would have been within the limitations period. Suffice it to say that those are not the facts before us today.

**D**

The plaintiff has two more shots in her sling. First, she points to a Maine tolling statute, Me. Stat. tit. 14, § 853, and suggests that it operates to rescue her suit. The statute permits persons who are "mentally ill" to bring action "after the disability is removed." Id.

Second, the plaintiff notes that survivorship actions brought under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-2680, entail a different accrual date. See Rakes v. United States, 442 F.3d 7, 20 (1st Cir. 2006) ("[A] claim does not accrue under the FTCA until a person in the plaintiff's position, that is, one who knew or should have known as much as the plaintiff knew or should have known, would believe that he had been injured and would know 'sufficient facts to permit a reasonable person to believe that there is a causal connection between the government and [the] injury.'" (second alteration in original) (quoting Skwira v. United States, 344 F.3d 64, 78 (1st Cir. 2003))). She strives to persuade us that the accrual date

for a survivorship action under section 1983 should be determined in the same manner.

These shots are wide of the mark.  The plaintiff did not raise either argument below and, thus, she cannot pursue them for the first time on appeal.  See Superline Transp. Co., 953 F.2d at 21.

## V

We need go no further.  For the reasons elucidated above, the judgment of the district court is


**Affirmed**.